JOSEPH J. SMITH *vs.* ELIZABETH ELLIOTT.

BERTHA L. DUGAN *vs.* ELIZABETH ELLIOTT.

Cumberland.    Opinion December 25, 1922.

*The negligence of the owner of the automobile, one of the plaintiffs, precluded him from having the verdict for defendant set aside. The plaintiff in the other case, an invited passenger, to whom negligence of the owner and driver of the automobile cannot be imputed, nevertheless cannot have the verdict for defendant disturbed in absence of proof of negligence of defendant.*

In the instant case, all other considerations aside, the negligence of the owner of the injured car, continuing to the very moment of the accident, barred a right on his part to maintain the action he brought. True, his negligence was not imputable to the other plaintiff. But, even if she herself were sufficiently attentive to consequences, there remains the controlling fact that negligence on the part of the defendant was not shown.

On motions for new trial by plaintiffs. These are actions on the case for alleged negligence in operating an automobile at the junction of Ocean Street and Broadway Extension, so called, which is an extension of Summer Street on the easterly side of Ocean Street in South Portland. It is alleged that on August 28, 1921, this negligence resulted in a collision between the automobile of the plaintiff, Joseph J. Smith, and that being driven by the defendant. The action brought by Joseph J. Smith was to recover damages for injury to his automobile; and in the other action the plaintiff, Bertha L. Dugan, daughter of the plaintiff in the first action, who was riding in the automobile with her father, sought to recover for personal injuries. The cases were tried together and a verdict for defendant rendered in each. Plaintiffs filed general motions for a new trial. Motions overruled.

The case is fully stated in the opinion.

*Frank H. Haskell,* for plaintiffs.

*Verrill, Hale, Booth & Ives,* for defendant.

SITTING:  CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

DUNN, J.   Only by a fiction of speech could it be said that the verdicts for the defendant, in these actions which were tried together, were clearly and unmistakably wrong.

Ocean Street, a main way in South Portland, and a side street called Summer, were intersecting; the latter, having reference to its recorded location, coming in from the westward at practically a right angle, and thence crossing to a so-called extension along a trolley line projection a few feet southerly of the travelled part of its opposite side.   Although this extension was lacking a formal establishment, and though its nature was generally broken and irregular like that of an ungraded fill, nevertheless it was used, rather infrequently, as a street, by travelers in vehicles, in going to and coming from places in the field or pasture through which it ran.

Both streets were of concrete surfacing, sixteen and fifteen feet, respectively, in width.   The surfacing on Summer united with that of Ocean on a northerly curve, toward the city of Portland.   This curving was so distinctive as to justify the belief that travel over it went almost entirely to that city and back.   On a traveller's right, going in the direction of Portland on Ocean Street, trolley tracks were nearly parallel to the cement, a three-foot strip of dirt intervening. Summer too had a trolley line, on the south side.   The tracks of this line had been extended across Ocean Street, in a world's war time convenience, to shipyards located beyond.   These tracks were still in position.   Also, the tracks of this line crossed from Summer to Ocean, in corresponding angle with the adjacent concrete,—a narrow strip of soil between the two,—to a connection with the tracks to Portland.

On a clear day in August of 1921, the defendant was operating an automobile on Ocean Street, Portland bound.   Her car was well over to the right of the travelled road.   The speed at which she drove, estimated by herself, in testimony replete with unreservedness, at a maximum of twenty miles the hour, was said by others to have seemed excessive of the statute's negligence presuming definition of faster than twenty-five miles.   Laws of 1921, Chap. 211, Sec. 62.   Whichever may be the more accurate estimate, it should be remembered that no car was immediately following or coming after the defend-

ant's, and that, on her side of the road, there was neither public street nor well-defined private one, cutting in. *Bragdon* v. *Kellogg,* 118 Maine, 42. Besides, it was not for the plaintiffs to rely, with implicit impunity, upon her driving at a lawful rate. *Bragdon* v. *Kellogg,* supra.

Back, an approximate distance of one hundred and forty feet, from the intersection of the streets, the defendant had had a plain view across lots of Summer Street, its stretch to Ocean being a little shorter, so she said, than that which she herself had to go to be where the streets were meeting. On Summer, moving to Ocean, was an automobile in which these plaintiffs were; the man· was driving. With him, riding by invitation without pay, was the other plaintiff, his daughter. When the defendant saw their car, both plaintiffs saw that in which the defendant was, on their right. They said that they then were nearer the intersection than she was. But the precise fact about this is of small consequence for it is clear that each driver drove on until, in the wonderfully short time in which the automobiles annihilated distances, their cars were not far apart at the junction of the streets.

When plaintiffs and defendant saw each other, for the first time, their cars kept on. The defendant testified, in substance, she had supposed that the other car would turn, on arriving at Ocean Street, and go ahead of her in the direction of Portland, or, perhaps, that it would come the other way. Her apprehension was, as they neared, not four, but three, corners, that the car approaching on Summer Street would be steered so as to pass to the left of the intersecting center lines of the travelled parts of the roads, or that it would be kept to the right of those lines in a course either to or from the city. Laws of 1921, Chap. 211, Sec. 7; *Bragdon* v. *Kellogg,* supra. But no; the car in which the plaintiffs were was the first to come to where the cements joined. Up to its arrival there, the driver's purpose of crossing Ocean Street had not been developed to the defendant. In less than a single second from that time, in deduction from his own testimony, the driver pressed forward across Ocean Street, the defendant's car in swift motion, right at hand. When his car was across, the defendant's car, according to the testimony in the plaintiff's case, would traverse the distance between the two before another second had gone. Hope and doubt and fear were contending in uncertain conflict in the excitement of that instant.

Instinctively the defendant swerved to the right, vainly struggling to avert a collision, the trolley locations impeding progress. After colliding with the car that had broken the course of hers, her own car went on, through and over trolley ties and track, and down the adjoining field some eighty feet, before it was brought to a stop. How her car was stopped, the defendant, in the stress of the moment, did not mark in memory. But, let the fact not be unnoticed, once her car was at a standstill, she was quickly out and hurrying to where the plaintiffs were.

The plaintiffs say:   (1)  Had the defendant, seeing us as we started to go across, but slackened the speed of her car, we would have passed safely in her front; or, (2), had she, in the exigency, by diverging to the left, gone in our rear, there would have been no accident.   Relative to these propositions, rates of speed and distances and lengths of cars, as well as other things, were urged argumentatively.

The legal test of adequacy, in weighing human conduct with a view to a judicial determination, is reasonable probability.   The ruling principle is, what he of ordinary prudence would or not have done in the circumstances; and not that wisdom which is revealed only after the event, or that fault finding which is so easy that it soon becomes uncritical.

This defendant was well within her right on Ocean Street.   Her course was fair and free almost till the crash.   She had no reason to anticipate that the car in which the plaintiffs were would dispute the way.   *Bragdon* v. *Kellogg,* supra.   She was without means of perceiving, until the Summer Street automobile was at the meeting of the roads, that such a situation might loom.   That the plaintiff driver had a right to put his car across the street is not to be gainsaid. But his right was to be exercised with due regard to the defendant's right.   He had seen her car coming along the street.   Afterward he did not look, across the vacant lots that lay between, for its whereabouts.   Instead, he kept on to the intersecting way, in unchecked speed and in unchanged direction, forgetful of the defendant's presence, and unmindful of her privilege as a traveler.   "At Ocean Street," said the plaintiff, Mr. Smith, in expiatory frankness, "I slowed down a little."   Slowing down began too late.   The advance of his car ought to have been retarded so as not to oppose the passage of the defendant's car which, in the circumstances, had precedency

on that street. Mr. Smith's own negligence, continuing to the very moment of the accident, necessitated the returning of a verdict against him. *Moran* v. *Smith*, 114 Maine, 55; *Smith* v. *Somerset Traction Co.*, 117 Maine, 407.

Mr Smith's negligence was not imputable to the other plaintiff. *Fernald* v. *French*, 121 Maine, 4. The fatal difficulty with her case, however, even granting that she herself was sufficiently attentive to consequences, was the absence of proof of the defendant's negligence.

In both cases the entry must be,

*Motion overruled.*