CHARLES H. CULLINAN, Admr. *vs.* ARTHUR TETRAULT.

Penobscot.  Opinion December 14, 1923.

*Where two persons are engaged in a joint enterprise, the negligence of one, while acting*
*in furtherance of that enterprise, which contributes to the personal injury of the*
*other occasioned by the negligence of a third party, is imputable to the*
*injured party; and such injured party cannot maintain an*
*action against such third party to recover damages*
*for such injuries.*

In this case the act of the defendant in leaving his store in charge of a boy, who was manifestly incompetent to be so left in charge, was in violation of R. S., Chap. 20, Sec. 10, and plainly negligent.

For the injuries suffered by the plaintiff's intestate by reason of the sale of poison instead of a harmless preparation, by the clerk in charge of the store, the defendant is liable in damages, provided the deceased was not himself in fault, or negligence on the part of his companion, Freeman, cannot be imputed to him.

The evidence clearly establishes that the conduct of Freeman, who made the purchase, was negligent.

The deceased and his companion, Freeman, were engaged in a joint enterprise, and Freeman's presence in the defendant's store was in furtherance of that joint enterprise, which continued until the fatal drinking was ended. The conduct of Freeman in the store is imputable to the deceased.

On report. An action to recover damages for personal injuries sustained by plaintiff's intestate, alleging that defendant's servant negligently sold to one Freeman, a friend and companion of intestate, oil of checkerberry, a poisonous preparation, in place of essence of checkerberry, which was taken by plaintiff's intestate resulting in his death. The general issue was pleaded by defendant and under a brief statement the negligence of the plaintiff's intestate was set up. At the conclusion of the evidence, by agreement of the parties, the cause was reported to the Law Court upon so much of the evidence as was legally admissible, for the determination of the rights of the parties, with stipulations that in case the defendant is liable, the case to be remanded for the assessment of damages, and if plaintiff not entitled to recover, judgment to be rendered for defendant. Judgment for defendant.

The case is stated at length in the opinion.
*Charles J. Hutchings and George E. Thompson*, for plaintiff.
*Benedict F. Maher and Pattangall & Locke*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

MORRILL, J. This is an action to recover for personal injuries sustained by plaintiff's intestate through the alleged negligent sale by defendant's servant to one Freeman of a poisonous preparation known as oil of checkerberry, in place of essence of checkerberry; the poison was taken by deceased and resulted in his death.

The case is reported to the Law Court for determination of the legal rights of the parties, upon so much of the evidence as is legally admissible; the certificate of the presiding Justice is in the usual form. All technical questions of pleading are deemed to be waived. *Whitman* v. *Allen*, 123 Maine, 1. *Pillsbury* v. *Brown*, 82 Maine, 450, 455. The question is presented, whether on all the evidence, giving it the weight and effect that a jury ought to give it, plaintiff is entitled to judgment. *Tatro* v. *Railroad Co.*, 108 Maine, 390.

The defendant, a druggist in Augusta, had occasion to be absent from his store on the twentieth day of July, 1921, from about 6:05 in the evening for about one hour and a half; during that period the store was open and left by defendant in charge of a boy, Edmund Auger, a few months more than seventeen years old; this boy lived in the block in which the store was located and worked in the Edwards cotton mill; he left school when in the seventh grade; for about three years he had worked at times for defendant, sweeping the store, doing errands, selling cigars, soda and ice cream, on an average about two hours a week. He was manifestly incompetent to be left in charge of the store, and the action of the defendant in that respect was in violation of R. S., Chap. 20, Sec. 10, and plainly negligent; and this is so, notwithstanding he had instructed Auger not to sell medicines and drugs.

On the twentieth of July, 1921 the deceased and one Clifford E. Freeman, former acquaintances, met at a regimental reunion in Augusta; about five o'clock in the afternoon they left the muster field and went directly to Tetrault's drug store where the boy, Auger, was in charge. The deceased remained on the sidewalk while

Freeman entered the store. The testimony of Freeman and Auger does not differ very materially as to what took place.

Freeman says:

"I told him—I asked him if he had any essence of checkerberry.

"Q. Did you say anything else to him at that time?

"A. No.

"Q. Did he make any reply to that question that you put to him?

"A. He said yes, he did.

"Q. Go on and state what you said to the clerk and what he said to you?

"A. So he says 'We have got some checkerberry here to clean your teeth with.' I says 'I don't want to clean my teeth.' He says 'Why don't you drink jakey.' I says, 'I will if you have got it.' 'Well,' he says, 'we haven't got it,' so he produced this bottle and he says 'smell of it'; I smelled of it and I says 'It smells like the essence of checkerberry' and he poured me out four ounces.

"Q. Did he deliver you the checkerberry in a four ounce bottle?

"A. . Yes sir."

Auger testifies to substantially the same effect, except his statement is, that Freeman asked for "five ounces of checkerberry."

The following morning Freeman related the circumstances to the county attorney as follows, according to the latter's testimony.

"He (Freeman) told me that they had decided that they wanted something to drink, and he had suggested to Cullinan that he thought something could be purchased at Tetrault's drug store and that they went up there. They went in, or he went in and found a young man behind the counter whom he thought was seventeen or eighteen years of age, as I remember, and asked the fellow if he had any checkerberry and the fellow answered him by saying he was not sure of it but that they had something there that they sold to clean teeth with; pointed to the bottle and reached for it and handed it to Freeman and asked him to smell of it to see if that was what he wanted. Freeman smelled of the bottle, passed it back to him and said that it was what he wanted. Four ounces were purchased."

Freeman then left the drug store and accompanied by Cullinan purchased a bottle of ginger ale; they poured out part of the ginger ale and replaced it with about half of the contents of the bottle purchased at the drug store, and each drank about half of. the mix-

ture.  They then went to a restaurant where Cullinan ate supper; while the latter was eating Freeman partly filled the ginger ale bottle with water and with Cullinan's knowledge poured into it the remainder of the contents of the other bottle; a part of this mixture Cullinan drank.

It is admitted that the liquid purchased by Freeman at the defendant's store was methyl salicylate, which according to the Standard Dictionary, is "artificial oil of Gaultheria (Wintergreen) synthetically prepared by distilling methyl (wood) alcohol with salicylic and sulphuric acids.  It resembles the true oil in taste and color," and in odor, as appears by the case.  From the effects of drinking the mixture both young men were made sick and Cullinan died the next morning.

The bottle in the drug store from which the liquid sold by Auger to Freeman was taken, was identified the next morning and found to be marked "Methyl Salicylate."

The plaintiff claims that the liability of defendant is thus established, upon the authority of *Thomas* v. *Winchester*, 6 N. Y., 397; 57 Am. Dec., 455; *Norton* v. *Sewall*, 106 Mass., 143; 8 Am. Rep., 298; *Wellington* v. *Oil Co.*, 104 Mass., 64.  The instant case is clearly within the principle recognized in those cases, provided the deceased was not himself in fault, or negligence on the part of Freeman cannot be imputed to him.

The declaration contains one count, based upon alleged negligence of defendant.  The defendant has specially pleaded and has the burden of showing (R. S., Chap. 87, Sec. 48) contributory negligence of the deceased.  The statute did not "undertake to change the substantive law of negligence in any respect.  The tribunal hearing the case must still be satisfied on all the evidence that the plaintiff was in the exercise of due care and did not by his own acts of omission or commission help to produce his injury, and that the defendant was negligent.  All these elements must appear by the greater amount of credible evidence."  *Duggan* v. *Bay St. Ry.*, 230 Mass., 370, 377.

The evidence clearly establishes that the conduct of Freeman was more than negligent; it was foolhardy.  It appears that both these young men went to defendant's store for the purpose of purchasing an intoxicating liquor; that regardless of whether Freeman called for "essence of checkerberry," as he testified, or "checkerberry,"

as Auger testified, they intended to obtain essence of checkerberry, which contains 5% oil of checkerberry, and 95% alcohol. Freeman's testimony establishes that they intended to purchase it for use as a beverage, "for the alcohol in it." The incompetency of the clerk was evident to Freeman; the latter told the county attorney: "He (Auger) didn't appear to me to know much concerning the checkerberry or anything regarding the things in the store." To purchase anything in a drug store from a boy who did not know what he was selling, had no realization of the dangerous qualities of the article, and appealed to the purchaser to know if it was what he wanted, and to accept the article offered solely upon the evidence of the sense of smell disregarding the label on the bottle, is the height of negligence. If Freeman in purchasing the poison relied upon the knowledge of the boy, as he now says, he was negligent, because the boy's ignorance was apparent to him. If he relied upon his own judgment, he was negligent, because the bottle was plainly marked, "Methyl Salicylate," and he should not have relied solely upon the odor of the contents. His negligence is too evident to require further discussion.

The deceased and Freeman were engaged in a joint enterprise, and Freeman's presence in the store was in furtherance of that joint enterprise, which continued until the fatal drinking was ended. The conduct of Freeman in the store is imputable to the deceased. *Beaucage* v. *Mercer*, 206 Mass., 492, 498. 1 Shearman & Redfield on Neg. (Street's 6th Ed.), Sec. 65a and cases cited in note.

*Judgment for defendant.*