[No. 21853. *En Banc.* January 21, 1930.]

F. C. MARTIN, *Respondent,* v. BARTELL DRUG COMPANY, *Appellant.*[1]

*Roberts, Skeel & Holman* and *Tyre H. Hollander,* for appellant.

*Dykeman, Monheimer & Griffin,* for respondent.

[1]Reported in 284 Pac. 96.

Main, J.—This action was brought to recover for the loss of a number of foxes which it was alleged was due to negligence chargeable to the defendant. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $4,000. Motion for judgment notwithstanding the verdict was made and overruled. A motion for new trial was also made, and this was overruled, conditioned upon the plaintiff electing to remit $1,000 from the verdict and accept a judgment for $3,000, which he did. Judgment was entered in favor of the plaintiff for $3,000, from which the defendant appeals.

The appellant, the Bartell Drug Company, a corporation, owns and operates a number of retail drug stores in the city of Seattle. The respondent operated a fox farm in the vicinity of the city. October 20, 1927, the respondent went to one of the appellant's drug stores for the purpose of purchasing a package containing 100 tetrachlorethylene pills. At this time, he had written on a slip of paper the word "tetrachlorethylene," and stated to the clerk that he could not pronounce the word, but, handing the clerk the slip, said that that was what he wanted.

With reference to the circumstances attending upon the purchase, respondent testified:

"Q. Just tell the jury what you did with reference to purchasing any articles, if you did purchase any?

"A. I went to the Bartell Drug Company at Second and Pike and wanted tetrachlorethylene. Well, I had never heard the name pronounced but a few times, and couldn't remember the name, and I had a neighbor of mine write it on a piece of paper—no, he didn't write it, he spelled it off of the box on his cook table, and as he spelled off two or three letters I would write those down, and he would spell out some more and I wrote them down, and I wrote the name 'tetrachlorethylene' down, and then I spelled it back to him and he checked

back and it was all right. Then I went into this drug store, and the clerk came to wait on me, and I says—I laid this here piece of paper down and I says, 'I can't pronounce this, but this is what I want.' He looked at it, and I says 'have you got it?' and he said 'Yes,' and he went around behind the counter. He was behind the prescription counter, and he walked down and pulled out a box under the case somewhere and come out with a box of twelve. And he says—I says, 'Is that the largest size box you have?' and he says 'just a minute and I will see.' Then I asked him what the price of this was, and he said 'Seventy-five cents.' 'Well,' I says, 'I would have to buy two of them and that would cost me a dollar and a half,' and I says, 'I understand a box of one hundred cost two and a half,' and so I says, 'That is what I want, a box of a hundred.' So he went then and looked through the case and came back and says, 'We haven't got a box of a hundred, but,' he says, 'I will get it for you and mail it out to you.' I says 'That is all right if I know I will get it shortly.' He says 'You will get it tomorrow.' I says, 'If you promise to mail it out today and I know I will get it tomorrow,' so he promises me that, and I paid him for a box of a hundred, and I made another purchase, and he gave me a receipt for this other purchase and a cash registry slip for the two purchases, and I went out and the next day I got in the mail—

"Q. (Interrupting): Just a minute. Have you the slip of paper that you showed to the clerk?

"A. I have."

The appellant did not have a box or carton containing 100 tetrachlorethylene pills, and the clerk stated to the respondent that they would get them that afternoon and send them out by mail. During the afternoon of that day, the appellant purchased from a local store of Parke, Davis & Co. a carton containing 100 "carbon tetrachloride" pills and mailed these to the respondent, which he received the next day. About a week later, after preparing his foxes, the respondent ad-

ministered to them the carbon tetrachloride pills which had been sent to him, believing the same to be tetrachlorethylene, and, as a result, eight of the foxes died.

The action, as above indicated is for the purpose of recovering the value of the foxes which died as the result of having had administered to them carbon tetrachloride pills instead of tetrachlorethylene.

The first question is whether the appellant was negligent. If the evidence of the respondent is to be believed, he ordered tetrachlorethylene pills and was furnished with carbon tetrachloride. The evidence on the part of the appellant, if believed by the jury, would indicate that the respondent was aware that he was getting carbon tetrachloride, and that the article which he ordered was in fact furnished. This presented a question for the jury. It is plain that, if the fact be that the respondent ordered tetrachlorethylene and the appellant gave him carbon tetrachloride pills, the appellant would be responsible for the error.

The rule that a retail druggist is not liable for injuries resulting from the use of an article when it is sold to the customer in the original package has no application in this case, because that rule is based upon the assumption that the druggist delivers to the customer the article called for, and, as stated, the jury had a right to find that this was not done in the present case. 9 R. C. L. 706; 19 C. J. 781; West v. Emanuel, 198 Pa. St. 180, 47 Atl. 965, 53 L. R. A. 329. In the case of Forney v. Sears, 153 Wash. 615, 280 Pac. 56, the druggist sold and delivered the articles called for, while here the appellant did not, as found by the jury, deliver the article called for and herein lies the distinction between the two cases.

It is next contended that the respondent was guilty of contributory negligence in not discovering that the article which was sent to him was not that

which he had ordered. The pills of the respective kinds are of substantially the same size, shape and color. They were put up in boxes or cartons of the same size, which have a strikingly similar appearance. In each of the boxes, is a small four-page circular on which are given the directions for the preparation of animals prior to administering the medicine and the quantity. When the box sent to the respondent was received by him, he took from it the wrapper and laid it aside. Across the front of one of the boxes, is printed the name "carbon tetrachloride," and across the other, "tetrachlorethylene." About a week after receiving the box, the respondent prepared the foxes for the medicine, and then administered it, with the result, as stated, that a number of them died.

It cannot be said, as a matter of law, that the respondent was guilty of contributory negligence in not discovering that he had received carbon tetrachloride pills when in fact he had ordered tetrachlorethylene. There was no occasion for him to read the directions, because, a short time before, he had assisted another fox farmer in administering tetrachlorethylene to sixty or seventy foxes, and knew the preparation of the foxes for that medicine and the quantity to administer. Even though there was written on the box which the respondent received, "carbon tetrachloride," this would not indicate to him, if his testimony is to be believed, that it was not the article that he had ordered.

From the testimony above quoted, it appears that, when he appeared at the appellant's store, he stated that he could not pronounce the name of what he wanted and that he could not spell it. The only way he could have discovered whether he had received the article which he ordered would have been for him to have taken the slip of paper and checked it, letter by

letter, with the lettering upon the box. This he was not required to do in order to free himself from the charge of contributory negligence as a matter of law. The name of carbon tetrachloride on the box conveyed to him no information as to its contents, or that it was something other than that which he had sought to purchase. The question of whether the respondent was guilty of contributory negligence was obviously one of fact and not one of law.

In *Hendry v. Judge & Dolph Drug Co.*, 211 Mo. App. 166, 245 S. W. 358, the plaintiff went to the drug store of the defendant and called for "Rochelle salts." She was waited upon by a clerk who delivered to her a can of "Roachsault". Subsequently, the plaintiff, believing that she had purchased "Rochelle salts," took a dose from the can which the clerk had given her, with the result that she became ill and sustained injuries. The can had on it the word "Roachsault," and it was there held that the question of whether the plaintiff was guilty of contributory negligence was one for the jury. It was said:

"Under the facts in this case, we cannot say that the court should have declared that the failure of plaintiff to read or examine the label attached to the can, constituted negligence *as a matter of law.*" (Citing authorities.)

It is true that that case was reversed and a new trial ordered on account of error in the instruction, but that in no way militates against the fact that the court held that the question of whether the plaintiff was guilty of contributory negligence was not one of law.

In the case of *Gwynn v. Duffield*, 61 Iowa 64, 15 N. W. 594, 47 Am. Rep. 802, the plaintiff applied to the defendant, a druggist, for extract of dandelion. The defendant, by mistake, took down a jar of belladonna, which was properly labeled, and took the required

quantity from it, and was wrapping it up, when the plaintiff put his knife into the jar and took out a small quantity on the point, and asked the defendant if that was a proper dose, and was informed that it was. He thereupon took it, and was poisoned, and suffered injury, and it was there held that the defendant was entitled to an instruction that if the plaintiff was guilty of contributory negligence he could not recover, which instruction had not been given upon the trial. The effect of that decision is that the question of whether the plaintiff was guilty of contributory negligence was one of fact and not one of law.

In the case of *Cullinan v. Tetrault,* 123 Maine 302, 122 Atl. 770, 31 A. L. R. 1330, the facts bear no similarity to the facts in the case now before us and that case cannot be considered an authority sustaining the contention that the respondent in the present case was guilty of contributory negligence as a matter of law.

The next question is whether the foxes died as the result of being administered carbon tetrachloride. Upon this question, the evidence is in conflict. If the evidence of the respondent be believed, and the jury had a right to accept it, the foxes were properly prepared for the administering of tetrachlorethylene and the dose given was proper for that medicine. The question was one for the jury.

The next question is whether there was error in the instructions. Instruction number 7 is especially complained of. In the first paragraph of the instruction, the court stated the law in the abstract, as follows:

"Ordinary care in reference to the business of a druggist signifies the highest practical degree of prudence, thoughtfulness and vigilance, and the most exact and reliable safeguards consistent with the reasonable conduct of the business, in order that human and

animal life may not be exposed to the danger flowing from the substitution of deadly poison for harmless medicine or more poisonous for lesser poisonous medicine."

That instruction states the law in almost the same language as it is stated in *Willson v. Faxon, Williams & Faxon*, 208 N. Y. 108, 101 N. E. 799, 47 L. R. A. (N. S.) 693, where it is said:

"The negligence which must be established to render a druggist liable in such a case as this is measured by his duty; and while this is only to exercise ordinary care, the phrase ordinary care in reference to the business of a druggist must be held to signify 'the highest practicable degree of prudence, thoughtfulness and vigilance, and the most exact and reliable safeguards consistent with the reasonable conduct of the business in order that human life may not constantly be exposed to the danger flowing from the substitution of deadly poisons for harmless medicines.' "

The rule of that case and the rule of the instruction is generally supported by the authorities. The instruction is also objected to because it is said that it assumes a fact which was in dispute. As already stated, the court in the first paragraph was stating the law in the abstract. In the subsequent paragraphs, when the application is made to the present case, the instruction contains the word "if" and leaves it to the jury to say whether there was a substitution. There was no error in the instruction.

Complaint is made of a number of other instructions given, as well as to the refusal to give certain requests. With reference to these it may be said that the instructions given correctly stated the law and that the requests, so far as it would have been proper to give them, were sufficiently covered by the instructions given.

Finally, it is contended that there was no proof

of the correct measure of damages. Here, again, the evidence was in dispute as to the value of the foxes for which recovery was sought. The verdict of the jury has the support of evidence offered by the respondent, and was within that evidence. While the verdict of the jury may appear to have been large, it must be remembered the foxes in question were high grade and were kept for breeding purposes and were of considerable value. Whether the trial court was justified in ordering a remission of $1,000 from the verdict, is a question not before us and upon which we express no opinion.

The judgment will be affirmed.

MITCHELL, C. J., BEALS, PARKER, TOLMAN, FRENCH, and MILLARD, JJ., concur.

HOLCOMB, J., (dissenting)—The rule followed by the majority, that a druggist is negligent who furnishes a harmful article instead of one not so harmful ordered by a customer, and that the rule as to an original package sale by a druggist has no application in this case, is correct, and is sustained by overwhelming authority. But there is more in this case than that.

Some most important facts are not mentioned in the prevailing opinion and referred to only in a very general way.

Both these compounds are anthelmintic in effect. Neither is highly poisonous. Either is more toxic in effect when the system of the animal is not in proper condition to receive it.

Respondent treated eighteen of his foxes and only eight of them died. None of the survivors showed any symptoms of sickness. According to his evidence, they were all dieted in the same way and the drug was administered to them all alike, according to their weights. Respondent, however, gave no evidence that he knew

how the man he had assisted once in worming foxes had dieted his foxes; or that he administered a purgative after giving the worm medicine, as the directions for both compounds advised. Respondent testified that, for six years before going into the fox business, he had been a retail grocer, and we must, therefore, conclusively presume that he was familiar with labels and their purposes; and there is no pretense that he was unable to read. There was no need for haste or prompt administration of the medicine in this case, and respondent kept the drug received from appellant for eight days before administering.

The negligence of a druggist varies with the increase or decrease of the banefulness of the drug furnished the customer as a substitute for some other drug. The more harmful the drug furnished, the greater the negligence. The less harmful, the less the negligence, until it becomes merely nominal. This is illustrated by the cases cited in the majority opinion, as in the case of "Rochelle salts" (*Hendry v. Judge & Dolph Drug Co.*, 211 Mo. App. 166, 245 S. W. 358). It is common knowledge that common salts of any kind are comparatively harmless. It is only because the name "Roachsault" was so similar to the name "Rochelle salts" that it could not have been said in that case that the customer was contributorily negligent as a matter of law in taking the dose from the article the druggist had furnished from which she sustained injuries. As a further illustration as to the negligence of the druggist, had the customer in that case ordered "Roachsault" for some purpose of her own and had been furnished "Rochelle salts," while the druggist would have been negligent, no harmful results would have resulted and there could have been no damage even under the implied warranty. The same thing is illustrated by the

extract of dandelion case (*Gwynn v. Duffield,* 61 Iowa 64, 15 N. W. 594, 47 Am. Rep. 802).

It was shown, undisputedly, in this case, also, that carbon tetrachloride had been in common use, for many years, by veterinarians as a vermifuge for animals, and that it was not highly poisonous, as was alleged by respondent. The fact that it apparently had a beneficial effect on ten of the foxes treated by respondent, and that only eight of them died, proves conclusively that carbon tetrachloride was not a highly poisonous substance. On the other hand, tetrachlorethylene, while a somewhat modified form of the same kind of vermifuge, must necessarily have had some of the same poisonous effect or it would not kill worms in animals.

The courts are in substantial accord that, even though a druggist made a mistake in delivering an article other than that purchased, yet must the plaintiff show that the negligent act of the druggist was the proximate cause of his injury. He must also show, as is generally required in negligence cases, that he himself exercised proper care in the premises. See notes to 31 A. L. R. 1586.

While the courts generally hold that the negligence of the plaintiff as a contributing cause to the injury is generally a question for the jury, yet, where it is conclusively shown that the purchaser of the article, having had ample time and capacity to acquaint himself with the article delivered and the method of its use before using, used no care whatever, no court has ever held that the druggist can be held responsible for the mistake.

We have consistently held that, where one of an age of discretion and in possession of his normal faculties and senses fails to see that which is plain to be seen and has an appreciable time to be warned thereby of

328

approaching danger, but walks into the approaching danger, without heeding the warning, he is guilty of contributory negligence as a matter of law.

There is no reason why the same principle should not apply here. Respondent was competent and had ample time, means and opportunity, to examine the package received from appellant. He failed so to do and carelessly took a chance of administering a thing that he could have determined at a glance, by comparing with his slip of paper which he used to procure the drug, was not that precise drug.

For the foregoing reasons, I dissent and consider that the motion for judgment n. o. v. should have been granted.