MILTON B. FIELD, ADMINISTRATOR *vs.* LEWIS H. WEBBER.

Cumberland.        Opinion, December 23, 1933.

*Hinckley, Hinckley & Shesong*, for plaintiff.
*Robinson & Richardson*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

DUNN, J.   This action is prosecuted for the benefit of the widow and posthumous child of the plaintiff administrator's intestate, who died without regaining consciousness, from injuries incurred in a collision between the motorcycle he owned and was riding and an automobile truck belonging to and operated by the defendant. The action is based on the Death-Liability Act, (R. S., Chap. 101,

238

Secs. 9 and 10), which affords and measures a remedy for certain designated persons, where none existed at common law. The test of the right to maintain the action is the right of the injured person to have maintained an action had death not ensued. *Danforth* v. *Emmons*, 124 Me., 156, 126 A., 821. Defendant pleaded the general issue, and specially, by brief statement, contributory negligence. R. S., Chap. 96, Sec. 50. When the evidence was ended, and the case for the defendant, and that for the plaintiff, had been rested, counsel for the defendant moved the directing of a verdict in favor of his client, on the ground that on the evidence a verdict for the plaintiff could not be permitted to stand. The motion was overruled; the point was saved. Thereupon the case was submitted to the jury. The verdict was for the plaintiff, in the sum of five thousand dollars. The case is here upon exception by defendant to the refusal to direct a verdict, and also on general motion for a new trial, the single assignment of the latter, advanced by defendant's counsel in their brief, and orally at the bar, being that the verdict is against the weight of the evidence. The motion and the exception present essentially the same question.

On April 28, 1932, the plaintiff's intestate, Bradbury A. Rand, was traveling on his motorcycle, southerly along Washington Street, a public way in Portland, the particular stretch of the road not being in a business or residential district. The time was six o'clock in the morning; it was daylight, and the weather was fair.

Washington Street, for present purposes, runs nearly north and south, is forty-four feet wide, and paved; there are double car tracks in the center; the clear for travel on either side is fifteen feet. The roadway is slightly upgrade. The motorcycle approached the truck from behind, and overtook it. The truck, which is described as a Dodge, two years old, having an open express body and an inclosed cab, had been used in delivering milk, and was homeward bound; the right wheels, on plaintiff's version, were between the rails of the easterly track, the vehicle moving forward to the operator's left of the medial line of the street. The rate of speed, on the estimate of witnesses called by the plaintiff, was twenty-five miles an hour. The same witnesses say that the motorcycle was traveling at thirty or thirty-five miles. No other vehicles were in the vicinity.

One witness called by plaintiff testified that twenty feet from the northerly line of the Eastern Promenade, a street ninety-five feet in width as it enters Washington Street from the eastward on a double turn, the motorcycle speeded to pass the truck. Another witness states that the attempted passing was fifty feet from the intersection; still another, that when the motorcycle endeavored to go ahead, both vehicles were within the space common to the intersection of the ways.

Evidence for the plaintiff tends to show that when the motorcycle "was just about half way by," the truck was "sheered" suddenly and without warning or signal of any kind, to the left, diagonally toward the other street, and "run into the motorcycle." Other testimony is that the truck "cut off the course of the motorcycle" without notice, making that vehicle collide with the truck, inevitably. Whichever the fact, the collision occurred. The impact careened the motorcycle, but the rider held on and guided it, albeit uncertainly, to the middle of the intersection; he then fell off, and was dragged to the far curb, where the motorcycle stopped.

Evidence for the defendant aims at proving that his truck, proceeding in the westerly, rather than the easterly car tracks, (and hence to the driver's right-hand side of the middle of the street), continued in undeviating line, until the accident. "Pretty close to the intersection," said the defendant himself on the witness stand, and though there had been plenty of room for the motorcycle to pass, yet it was driven, without its rider giving such audible warning by horn or other warning device as the statute required, (R. S., Chap. 29, Sec. 70), till it struck the left front fender of the truck a glancing blow, diverting the direction of the motorcycle, with consequent fatality. On the impact, the defendant's testimony continues, he drove the truck to the left curb, "to avoid the man" on the motorcycle, of whose presence he had not before then known.

This, briefly stated, is substantially the contention of the parties.

The gist of the action is negligence. Negligence has been defined as the want of ordinary care, that is, the omission to do something which a prudent and reasonable man, led by those considerations which ordinarily regulate human affairs, would do, or doing something which such a man would not do. 20 R. C. L., 26.

Plaintiff asserts and insists that the evidence for his side, in-

clusive of that of the violation by the defendant of the statutory regulation of a left turn, with immediately resultant injury, establishes actionable negligence. The statute, in expressing the legislative view concerning what drivers on the street should ordinarily do, requires that: ". . . the driver of a vehicle intending . . . to turn to the left (at any intersection of public ways) shall approach such intersection in the lane for traffic to the right'of and nearest to the center line of the way, and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left." R. S., Chap. 29, Sec. 74.

A penalty is provided for violation of the provisions of the statute. This, it might be noted parenthetically, is likewise true of all other traffic statutes of later reference herein.

Disobedience of the rule of the road is always material, and often important evidence, tending, though not conclusively, to show negligence between which and injury there might, or might not be, on the proof, causal connection. The violation of a traffic statute is an item calling for consideration. Negligence and causal connection are ordinarily questions of fact. *Neal* v. *Rendall*, 98 Me., 69, 56 A., 209. Driving to the left of the middle of the road which a clear vision discloses unobstructed, is not necessarily evidence of negligence. *O'Malia* v. *Thomas*, 123 Me., 286, 122 A., 773. Nor, in every situation, is it an act of negligence for a driver to turn to the left. *Skene* v. *Graham*, 114 Me., 95A., 950.

The defendant had, in general, and under reasonable restrictions as to the exercise of care by him, a right to travel anywhere upon the way, no one else lawfully desiring to use it. *O'Malia* v. *Thomas*, supra. This does not mean that a motorist is justified in enforcing his right if he has reason to believe that in doing so he will incur danger of collision. The right is not an absolute privilege but something relative. It does not confer a license to violate other traffic laws, nor abrogate the legal requirement for care, not alone for the safety of its possessor, but, as well, for that of other travelers. An operator of a vehicle, though he has such right, must, for instance, if meeting another, seasonably drive to the right of the middle of the traveled part of the road, so that each shall have one-half of such part, and that they may pass without inter-

ference. R. S., Chap. 29, Sec. 2 ; *Neal* v. *Rendall,* supra ; *Bragdon* v. *Kellogg,* 118 Me., 42, 105 A., 433. And he must yield for a vehicle in his rear to pass, on suitable and audible signal being given. R. S., Chap. 29, Sec. 72 ; *Levesque* v. *Pelletier,* 131 Me., 266, 274, 161 A., 198, 202.

When the operator of a motor vehicle intends to cross a street, he must use reasonable care to ascertain whether cars are attempting to pass from behind. *Verrill* v. *Harrington,* 131 Me., 390, 163 A., 266.

Upon the propositions of (1) negligence of the defendant, and (2) proximate relation of that negligence to the death of the intestate, there was, on the theory of the case apparently accepted by the jury, evidential basis substantiating the declaration in the writ. The jury might properly find that death resulted, in continuous and natural sequence, from the failure of the defendant to discharge the duty owed by him to plaintiff's intestate.

Although the defendant was negligent, and his negligence a producing cause, he is not liable if plaintiff's intestate's own want of consistent care was in any degree contributable to the unfortunate misadventure. The intestate was bound to exercise reasonable care to avoid colliding with the truck. Overtaking and passing a motor vehicle at any time calls for caution. *Levesque* v. *Pelletier,* supra.

In order to constitute contributory negligence, act or inadvertence of plaintiff, amounting to a breach of the duty which the law imposes upon persons to protect themselves from harm, must so unite with actionable negligence of defendant as to make the damage complained of, the direct result of such mutual and coöperating negligence. 45 C. J., 942. "It (contributory negligence) debars from recovery, even from an admittedly negligent defendant, one whose own social misconduct has been a concurring proximate cause of his harm." 21 Harvard Law Review, 233, 258. The defense is grounded on the common-law rule that the law will not apportion the consequences of concurrent negligence. *Hines* v. *McCullers* (Miss.), 83 So., 734.

At common law, in actions of tort for negligence, the plaintiff has to prove, by a fair preponderance of all the evidence, not only that defendant was negligent, and harm without other agency resulting, but also to negative contributory negligence. Absence of

proof of any of these elements precludes a recovery. With respect to cases like the present, a statute provides:

"In actions to recover damages for negligently causing the death of a person . . . the person for whose death . . . the action is brought shall be presumed to have been in the exercise of due care . . . , and if contributory negligence be relied upon as a defense, it shall be pleaded and proved by the defendant." R. S., Chap. 96, Sec. 50.

This statute did not undertake to change the substantive law of negligence. *Cullinan* v. *Tetrault*, 123 Me., 302, 305, 122 A., 770, 772. Cases must still be decided upon all the evidence. *Levesque* v. *Dumont*, 117 Me., 262, 103 A., 737. The law allows a recovery against one who negligently causes the death of another, that other having been, at the time, in the exercise of ordinary care. The statute enacts a presumption of care; next, it casts upon the defendant the burden of overcoming such presumption, and proving want of care on the part of the deceased person. *Danforth* v. *Emmons*, supra. This shifting of the burden of proof works no change in the underlying principles of law. If a plaintiff's intestate's own want of ordinary care is proved to have been contributory to his death, plaintiff may not prevail. *Jones* v. *Manufacturing Company*, 92 Me., 565, 569, 43 A., 512, 513.

There is, then, for review, on this branch of the case, these questions: Did defendant prove, by believable evidence overcoming the statutory presumption of due care, that plaintiff's intestate failed to exercise such care as an ordinarily careful and prudent cyclist would have exercised under similar or substantially the same circumstances, — and that such failure contributed to and entered into the fatality? Contributory negligence is usually for the jury. Yet, when the evidence is conclusive that conduct was not in harmony with what an ordinarily prudent man would do, and a valid verdict, in any rational view, could not be returned for the plaintiff, the judge should order the verdict the evidence demands. *Day, Admx.* v. *Boston and Maine Railroad*, 97 Me., 528, 55 A., 420; *Kidney, Admr.* v. *Aroostook Valley Railroad*, 119 Me., 597, 111 A., 334.

The general verdict in this case indicates that the jury found the defendant's proof fell short of outweighing presumed due care, and establishing the contrary.

In determining whether the plaintiff's intestate was guilty of contributory negligence, these provisions of statute law have bearing:

"The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at . . . any intersection of ways." R. S., Chap. 29, Sec. 71.

"The driver of an overtaking motor vehicle not within a business or residence district . . . shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction." R. S., Chap. 29, Sec. 70.

Prima facie, as before stated, violation of a traffic statute is evidence of negligence. *Neal* v. *Rendall*, supra; *Bragdon* v. *Kellogg*, supra; *Dansky* v. *Kotimaki*, 125 Me., 72, 130 A., 871; *Bolduc* v. *Garcelon*, 127 Me., 482, 144 A., 395. Such a violation is not necessarily evidence of contributory negligence. Evidence that plaintiff was lacking in the care and diligence that an ordinary person would use, is not evidence that defendant was actionably negligent.

The presumption of the deceased person's due care is, as counsel urges, inclusive of the due observance by him of traffic statutes. Irrespective of the presumption, illegality is not to be presumed. *Lyons* v. *Jordan*, 117 Me., 117, 102 A., 976.

When the accident happened, plaintiff's three witnesses were walking northerly on the sidewalk, on the westerly side of the street, in a sense to meet the vehicles. Two of them were going along together, hurrying to their work; they were fifty to one hundred feet from the vehicles. Both these men, as witnesses, gave evidence that the collision occurred before the motorcycle and the truck were at the intersection. The third man, who appears to have been three times as far away as the others, seems, on cross-examination, to say that the collision was within the intersection. The testimony of this witness, despite the efforts of counsel on the opposing sides, and of the presiding Justice, that he be definite, is confused and confusing, except as to his having seen the accident. The defendant himself, and defendant's son (who too was riding in the truck cab. the left window of which was down), testify that while the locus was close to the intersection, the vehicles had not yet come to the meeting of the streets. This, in summary, is all the evidence in this connection.

The inhibition of the statute is that a motor vehicle must not attempt to pass another, proceeding in the same direction, at any intersection of streets. Traffic statutes are given a reasonable construction. "At" is a word of somewhat indefinite meaning, whose significance is generally controlled by the context and accompanying surroundings. Used in reference to place, it often means "in" or "within," but its primary sense encases the idea of "nearness" or "proximity." 4 Cyc., 365. "At" is less specific than "in" or "on." *Lovin* v. *Hicks* (Minn.), 133 N. W., 575. "At" emphasizes locality. "One who drives out of a single file of cars in motion just before entering a street intersection, and proceeds abreast of it, violates a traffic ordinance forbidding attempts to pass vehicles, 'at a street intersection'." Headnote, *Crosby* v. *Canino*, 78 A. L. R., 1202; 89 Colo., 434, Pac., (2d) 792.

Laying aside the question of where the collision was, as debatable, and involving a matter for the jury, this further inquiry claims attention: Did the cyclist reasonably give warning with his horn or other warning device, before attempting to pass the truck, of his desire and intention to go by it, and, if so, did failure to warn constitute contributory negligence? The burden, it is to be borne in mind, is on the defendant. One of plaintiff's witnesses testified positively that no signal was given. All the other witnesses, — two for the plaintiff and two for the defense, — simply say they heard no sound of horn. The significance to be attached to testimony concerning whether or not the signal which the statute exacts was given, depends upon attendant circumstances.

The street on which the vehicles were proceeding was, to the left of the truck, twelve feet in width. Notwithstanding, the motorcycle "crawled by slowly," "four or five feet from the truck," without, — as all the testimonial evidence tends to show, — sounding an audible warning.

It may be that the cyclist was relying that the truck driver, before turning his vehicle to the left, would proceed to the center of the intersection, as required by statute. A driver of a vehicle may rely somewhat that drivers of other vehicles will be obedient to law, but not implicitly. *Larrabee* v. *Sewall*, 66 Me., 376, 381; *Smith* v. *Elliott*, 122 Me., 126, 119 A., 203.

There is testimony that the noise made by the exhaust of the motorcycle was heard by the men on the sidewalk, who witnessed for plaintiff, — even by the most distant one of them, who was deaf. The defendant, while on the witness stand, said that he heard only the noise of his own truck. The noise of the motorcycle might well have suggested a motor vehicle, laboring, — as witnesses testify the motorcycle did,—to make the hill, which was negotiated appreciably before starting to go by the truck; but there is no room in the evidence for inference that any such noise was tantamount to the intersectional warning the statute prescribes.

Plaintiff stresses that his intestate was confronted by an emergency. Any emergency was not attributable solely to negligence on defendant's part; had plaintiff's intestate exercised ordinary care, the emergency now insisted would not have arisen. *Esponette* v. *Wiseman*, 130 Me., 297, 303, 155 A., 650, 654.

To him who reviews the sad accident, on the neutrality of the printed transcript, seeking only the verity of that record, there seems, in justice, no escape from the conclusion that plaintiff's intestate's negligence was proved to have been a moving or contributory cause of his death. The evidence, on this phase, did not, in fact, disclose a jury question; it presented a question of law. *Levesque* v. *Dumont*, supra. The exception has merit. Of the verdict, it suffices to say that it can be given no weight whatever.

> *Exception sustained.*
> *Motion sustained.*
> *Verdict set aside.*
> *New trial granted.*