RUSSELL R. GREENE, ADMR.

*vs.*

FRANK S. WILLEY, JR.

Cumberland.   Opinion, January 21, 1952.

*Bernstein & Bernstein,* for plaintiff.

*Robinson, Richardson & Leddy,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J.  This is an action brought to recover damages for death, in accordance with the provisions of Revised Statutes (1944), Chapter 152, Sections 9 and 10. The plaintiff's intestate, Beverly Ann Greene, met her death on July 15, 1950 as a result of an accident involving the motor vehicle of the defendant, Frank S. Willey, Jr. The deceased was at the time nearly twelve years of age (born August 29, 1938). The case was heard in the Cumberland County Superior Court. At the close of the testimony, on motion of the defendant, the court directed the jury to return a verdict for the defendant. The case is now before the Law Court on plaintiff's exceptions.

The record shows that on July 15, 1950 the defendant, in his tractor truck, was proceeding westerly on Lincoln Street in Saco, Maine. The truck was a vehicle "about 20 or 25 feet long" designed to haul a trailer, but at this time "no trailer truck" was attached. The tractor had dual wheels in the rear. The truck was proceeding slowly, although there is disputed testimony relative to the speed, and as to exactly where the truck was with relation to the center of the road at the time of the accident. And although it is difficult to understand from the testimony wherein the defendant was negligent under all the circumstances, there was some testimony from which the jury might have found that the defendant was not proceeding with "all care and caution." The plaintiff is entitled on his exceptions, where a verdict has been directed against him, to have the testimony treated in the most favorable aspect to his case of

which it might be reasonably susceptible. The jury has the right to determine controverted facts and to draw any reasonable and legal inferences.

Beverly Greene was playing with three or four other young people in her yard or driveway on the left or southerly side of Lincoln Street. There were also some children in the yard on the opposite side of the street. There was a sidewalk between the Greene yard and the highway. There was no traffic on the highway and no children in the street as the defendant proceeded in his truck. Beverly, her sister Dorothy, Richard Grant and Jerry Twomey were playing a game which they called "Relievo." Beverly and Richard were opposing Dorothy and Jerry. The object was for one "team" to "capture" the members of the other team and place them in a circle marked on the ground. The object of the other team was to avoid being caught, and if or when one were caught, the other could "release" him or her by running through the circle. At the time of, or immediately before the accident, Beverly had been captured and was in the circle, and Richard was trying to run through the circle in order to release her. The circle was located in the yard of Beverly Greene's home, and as Dorothy Greene testified, seven or eight steps from the black-top road.

After some running about the Greene yard on the part of Richard Grant, he ran through the circle and said "Relievo," and thus released Beverly Greene who was being guarded in the circle by her sister Dorothy Greene. Beverly made her escape by running across the sidewalk into the street, at the same instant of time that the defendant approached in his truck. The evidence is overwhelming that as she ran out of the circle her head was turned to see if anyone was in pursuit of her, and with her head turned, ran to the side of the truck and was struck by the left rear wheel of the truck and was instantly killed.

The plaintiff's witness, Richard Camden, who was ten years old, and sitting on the steps of a house across the

street watching the game, said that Beverly ran into the street, "Dorothy started to chase her but she stopped and Beverly stopped to look at her to see if she was chasing her." She was then struck. Dorothy Greene, the fifteen year old sister of the deceased, says that the two boys ran down the sidewalk, but her sister Beverly ran into the street; that she (Dorothy) started to run after her sister but she saw the truck and stopped running. She said her sister Beverly ran into the street, "she stopped to look at me" at the moment she was hit. Richard Grant, called by defendant, sixteen years old, testified that he ran through the circle, said "relievo," and "I kept running down the street when I glanced up I see the truck coming. When I turned around Beverly had fallen to the ground." Richard says he turned "in front of the hydrant" which was but a few feet from the circle. Jerry Twomey, fourteen years old, who was one of the children playing and who lived next door to the Greene home, testified as follows: "We had just chased Beverly and caught her. Dorothy brought her back. Dicky started running up and down and I started chasing him. He had gone down the street. Dorothy was guarding the circle. Just after I got to the hydrant he ran through the circle and relieved her and then she hit the truck. Q. What did Beverly do? A. she ran out. She slowed down but she didn't really stop. She slowed down and then they met. Q. Who met? A. The truck and Beverly. Q. What part of the truck? A. The left hind wheel." Twomey also said "she kept going until the truck and she collided. She looked sideways. I guess she was trying to see if Dorothy was close to her to get away."

Richard Ruck who was riding with the defendant in the truck, at about six o'clock in the afternoon, says: "There were kids on both sides of the street. He pulled over to about the center of the road. I see this girl running so I looked. She was running toward the truck, running with her back to the truck. The front of the truck was by her at

that time. She ran into the rear wheel. I looked out and see it when it hit. It just knocked her down." Ruck further stated "somebody was chasing this girl and ran her right into the truck."

It is very apparent that the deceased was never in front of the truck. She ran towards it and was struck by a rear left wheel that extended a little beyond the side of the truck. There is no testimony that indicates otherwise. At the identical fractional second that she stopped running (if she did stop running) the front end of the truck was beyond her and she was hit by the rear wheel.

The evidence, and all the evidence, must be taken in its most favorable aspect to the plaintiff's contentions. The jury has the right to determine controverted facts and the inferences to be drawn. There is conflicting testimony here as to whether the defendant's horn was sounded, whether sounding was necessary, what was the actual speed, if speed was important. There was some testimony from which a jury might have inferred a speed in excess of statutory permission in that built up section. The violation of a traffic statute, if there was violation, may be evidence of negligence. *Bernstein* v. *Carmichael,* 146 Me. 446; *Field* v. *Webber,* 132 Me. 236, 243; *Neal* v. *Rendall,* 98 Me. 69.

Where an automobile driver sees a child in a place of danger, or sees a child of tender years near or in the street in front of him, he must have his car under proper control, and to stop if necessity demands. Otherwise, he may be held negligent. *Hamlin* v. *Bragg,* 128 Me. 358, where a child of five years was seen by the driver on a plank platform across the ditch from the sidewalk, he gave no warning of his approach and the child started across the street. The Hamlin child did not suddenly dart out, because the driver saw the child standing on the platform, but because of speed, or other cause, he was not able to avoid striking the child when the child started to cross the street. This court held

that a jury might well find that the driver was negligent, and under such circumstances it was a jury question as to the contributory negligence of a child of five years. See *Meserve* v. *Libby*, 115 Me. 282, where a child of six years stopped in front of an automobile and the automobile stopped, but the driver assumed the child would permit him to pass and started up, injuring the child. See also *Ross* v. *Russell*, 142 Me. 101 where a child of eight passed through a line of cars halted by traffic officer. She stopped as defendant came along close to the waiting line, and she tried to get back to a point of safety and was struck. Held question for jury.

In all of the foregoing cases the child was where the driver should see and assume that the child might cross in front of him. The driver of an automobile is not obliged to stop when children are playing in their dooryards with a sidewalk between them and the road. Otherwise, no automobile would ever reach its destination. It is difficult for the Court to understand, on this record, wherein this driver was negligent, but the question of the negligence of the driver, in the case at bar, must be held a jury question. There is more than "a scintilla of evidence." *Bernstein* v. *Carmichael*, 146 Me. 446, 450. There are some inferences that might possibly be drawn indicating negligence on the part of the driver, in view of the conflicting testimony as to speed, warning, control, and exact location of the truck on the highway.

The heedless, and most unfortunate action of this twelve year old girl, however, presents another and a legal question. There is no testimony dispute as to her actions. There is no controversy as to what portion of the truck she hit, or that hit her. There is no real controversy as to what she was doing and why she thoughtlessly ran into the street and into the rear left-hand side of this truck. The natural sympathy of the court is always with the members of a family in such dreadful misfortune, but too often the victim of

highway accidents negligently contributes to his own dis-, aster. The victim's actions, or failure to see and act, may be the proximate or only cause of injury, or it may be a con-, curring and contributory cause.

In this case, brought under the Death Statutes (Revised Statutes (1944), Chapter 152, Sections 9, 10), there is a presumption that the deceased was in the exercise of due care, and the defendant must plead contributory negligence spe-, cially. In order that one person may recover damages of another, it is always necessary that it appear (1) that that other was negligent, and (2) that he who seeks damages for injuries due to another's negligence was free from any negligence contributing thereto. How, when, and where, are used to ask most of the questions in a negligence case, and in their correct answer lies liability or non-liability. This statutory presumption of due care on the part of the deceased is a presumption of fact, but what the true fact is, may clearly and positively appear either in the plaintiff's case or in the defendant's. It is a presumption of fact that may be overcome by credible evidence to the contrary.

This statute does not undertake to change the substantive law, and cases must be decided upon all the evidence presented. The statute enacts a presumption of care on the part of the deceased, and it also casts the burden of overcoming the presumption upon the defendant. Contributory negligence is usually a question for the jury, but when it appears in a case, from substantial and uncontroverted testimony, that the plaintiff was negligent, and that his negligence contributed to his injuries, the judge should order the verdict that this evidence demands. *Field* v. *Webber*, 132 Me. 236, 242; *Levesque* v. *Dumont*, 117 Me. 262, same case 116 Me. 25.

The record in this case shows that the statutory presumption of due care on the part of the deceased was entirely overcome. The evidence from many witnesses, both for the

plaintiff and for the defendant, is clear, uncontradicted and conclusive that the plaintiff's intestate either ran directly into the side of a defendant's truck, or darted across the sidewalk into the street and stopped so close to the truck that she was hit by the rear left wheel. At no time did she look where she was going. She never looked toward the truck or any other point in the street. She ran and was looking backward toward a probable pursuer among her play fellows, when the truck was then only a few feet away and directly in her path. She was never in front of the truck, and in all probability never within the vision of the driver from the time when she eagerly rushed from the circle into the street, to traverse a few running steps to the side of the moving vehicle. This girl was not a little child of five or six years. She was approximately twelve (11 years, 11 months), in the fifth grade of school, and according to testimony "very intelligent," She had the "capacity" to exercise care for herself. *Grant* v. *Bangor Railway and Electric Co.,* 109 Me. 133, 138; *Colomb* v. *Street Railway,* 100 Me. 418; *Levesque* v. *Dumont,* 116 Me. 25.

As once said by this court: "To him who reviews the sad accident, on the neutrality of the printed transcript, seeking only the verity of that record, there seems, in justice, no escape from the conclusion that plaintiff's intestate's negligence was proved to have been a moving or contributory cause of (her) death. The evidence, on this phase, did not, in fact, disclose a jury question; it presented a question of law." *Field* v. *Webber,* 132 Me. 236, 245.

In fact, where the impact was with the body of the truck, the inference is that the child was never in a place where the truck driver had a chance to see her. The act of the child may be the sole proximate cause of the accident. *Wiles et al.* v. *Connor Coal & Wood Co.,* 143 Me. 250, 260; *Levesque* v. *Dumont et al.,* 116 Me. 25; *Milligan* v. *Weare,* 139 Me. 199.

Where a boy eight years old saw an automobile approaching and attempted to run across the street in front of it. He either ran against the automobile or was struck by it. The court by Chief Justice Savage say: "We think the plaintiff was guilty of contributory negligence. Whether he was hit by one mud guard as he claims, or ran against the other, he was trying to run across in front of an approaching car, which could have been only a few feet away, when he started the second time. It was a childish impulse, no doubt, to follow his playfellow. But the danger was so obvious and so immediate, that even a child of his years should have known better. Children even of his age are held to the exercise of some care. They cannot be absolutely careless, and then hold others responsible to them for the results to which their carelessness contributed." *Moran* v. *Smith,* 114 Me. 55, 57.

The plaintiff cites the case of *Hutchins* v. *Emery,* 134 Me. 205, where the plaintiff was on the sidewalk where she had a right to be and was struck by an automobile forced upon the walk by action of defendant's automobile,—held a question of fact for the jury as to whether defendant's act was the proximate cause of injury. In *Guillory* v. *Horecky,* 168 So. 481 (La.), cited by the plaintiff, the evidence showed that children were walking and playing tag on the side of the road and the driver saw them for a block away, an eleven year old girl was killed,—held a question of fact as to proximate cause, because "no plea of contributory negligence was filed." *Duff* v. *Husted,* 111 Atl. 186 (Conn.), relied on by plaintiff, raised the question of whether contributory negligence was attributable to a boy of six years playing on the road,—held question for jury. In *Brown* v. *Wade,* 145 So. 790 (La.), a child of three years and ten months seen by defendant to be coming to corner of street, and defendant assumed the child would not attempt to cross,—judgment for plaintiff affirmed. The child of that age was "incapable of being contributorily negligent." In *Ottenheimer* v. *Molo-*

*han,* 126 Atl. 97 (Md.), "there was nothing to prevent the defendant from seeing the \*\*\* small children playing at the roadside \*\*\* he might have turned aside when he realized the actual peril." In *Gettemy* v. *Grennan Bakeries,* 21 Atl. (2nd) 465 (Pa.) the court held, in the case of a six year old child walking and playing with others on the road from school, and seen by driver for 600 feet, that the driver of an automobile is not held negligent if a child suddenly darts into view and gets hit, but where small children are playing in the road in full view, the driver must watch for the unexpected.

The court in Massachusetts, where a boy nearly twelve years old (as Beverly Greene in this case) in an effort to escape the police, ran from the yard and across the sidewalk into the street, and was struck by the rear wheel of defendant's truck then passing,—held that a verdict for defendant was rightly ordered, because the conclusion was necessary that "as matter of law, the intestate was negligent and such negligence was a contributory cause of his injury." *Jackman* v. *O'Hara,* 280 Mass. 496, 498.

Children must have a place to play. We have no law that prohibits a child from playing near, or even in the street. The automobile driver must use care and be able to stop when children of tender years are in his range of vision, and in or near the highway. Very young children may be expected to do the unexpected. The driver of an automobile is not liable, however, even if he is negligent, if the accident is unavoidable, or if the person injured is of sufficient age to have the capacity to use care, and negligently contributes to his injury, and he is not liable if the accident is entirely due to the act of the child.

We are obliged to hold, in this case, that the direction of a verdict for the defendant was correct.

*Exceptions overruled.*