Stephen M. RILEY, Administrator of the Estate of Oliver F. Moores, Plaintiff,

v.

PENOBSCOT PURCHASING COMPANY and Wayne Barker, Defendants.

Civ. A. No. 765.

United States District Court, D. Maine, N. D.

Feb. 4, 1955.

George Muir, Hartford, Conn., Linwood A. Pratt, Damariscotta, Me., for plaintiff.

James M. Gillin, Bangor, Me., for defendants.

CLIFFORD, District Judge.

This action arises from an automobile collision which occurred on U. S. Route No. 2 in Costigan, Maine, on the afternoon of May 24, 1952. It is admitted that plaintiff's intestate, Oliver F. Moores, received injuries in said collision from which he died without conscious suffering. Stephen M. Riley, the duly qualified administrator of the estate of Oliver F. Moores, has brought this action for damages under sections 9 and 10 of Chap. 152 of R.S. of Maine 1944, for the benefit of the widow of Moores,

Mrs. Julia M. Moores Geisendorff, and for the children of Moores, Paulette Frances Moores, minor daughter of plaintiff's intestate by the widow, Mrs. Geisendorff, and Eugene and Wilfred Moores, minor children of plaintiff's intestate by his first wife. There is no claim for property damage.

The facts, as found by this Court, are as follows:

At approximately 11:00 P.M. on the evening of May 23, 1952, plaintiff's intestate, who formerly lived in Maine, was in a grill or restaurant on Park Street in Hartford, Connecticut where he was then residing. There he met, by chance, a Mr. Victor Gero, an old acquaintance, formerly of Old Town, Maine, whom he had not seen for some years, and his companion. They had "several beers" together, and all three engaged in conversation at the bar. They remained there talking until shortly before 1:00 A.M., or closing time on May 24th. As a result of their conversation the plaintiff's intestate agreed to drive these two men to Millinocket, Maine. No compensation was involved. A fourth man who was in this grill and who came from the Town of Brewer, Maine, asked permission to go along with them on the trip. He was a stranger whose name was unknown to all. His request was granted and shortly thereafter these four men started the trip to Maine in a Cadillac automobile, owned and operated by plaintiff's intestate. The only one in the party who had any money was Mr. Gero's companion, a Mr. Pound.

While proceeding on the way to Boston some beer was purchased and drunk by all. Later on tire trouble developed and a used tire was purchased by Mr. Pound. Shortly thereafter, they stopped and slept until daybreak in the automobile. About twenty miles from Boston, on their way to Maine, they picked up a stranger by the name of Wood, who was hitch-hiking to Houlton, Maine.

The party of five then proceeded to Portland, where they remained for an hour or more while the radiator of the Cadillac was being fixed at a local garage. While waiting in Portland, they ate and drank some beer. They then proceeded to the City of Gardner, Maine, where they purchased a pint of liquor at the liquor store.

On the way to Bangor, the pint bottle of liquor was opened and was passed around. All drank some whiskey with the exception of Mr. Wood. When reaching Bangor at about noontime, they stopped at several restaurants, ate some food, and consumed some more beer. The stranger from Hartford, Connecticut, invited at the start of the trip was "well loaded", and, after some difficulty, he was removed from the automobile and left in Bangor.

The four men remaining in the automobile then proceeded to Old Town, where they stopped and called on a friend who also conducted a restaurant. While there, the plaintiff's intestate and Mr. Gero had some beer. Following this, they then proceeded toward the Town of Millinocket, Maine. The two men— namely, Mr. Wood and Mr. Pound, were asleep in the rear seat, and the plaintiff's intestate and Mr. Gero were seated in the front seat, engaged in conversation.

The Town of Costigan, where the collision occurred, is between Old Town and Millinocket. The automobile, driven by plaintiff's intestate, was travelling at a very high rate of speed, estimated by Mr. Gero, the passenger, at 95 miles an hour. As it approached the Town of Costigan they slowed down to approximately 65 miles per hour. As they crossed the bridge leaving Costigan, they resumed their previous rate of speed, driving in the middle of the road, on a long, straight, level piece of tarvia covered highway toward the entrance to a gravel pit owned by the Penobscot Purchasing Company, defendant. It was a little after 3:00 P.M., the weather was clear and sunny, and the road was dry. The traffic was not heavy in either direction.

On this stretch of highway, proceeding northerly toward the gravel pit, a three-ton Chevrolet dump truck, with a hydraulic lift, was being operated by defendant, Wayne C. Barker. For four days previous to May 24, 1952, Mr. Barker had been engaged in hauling gravel from said pit to Old Town and was engaged in this operation on the day of the accident. He was a truck driver who had been employed by the defendant company since 1946. With him in the cab of the truck were two young boys, aged nine and ten. Mr. Barker was thoroughly familiar with the road and this entire area for a period of five or six years.

Mr. Barker was traveling on the right-hand side of the highway and had approached within a distance of 75 or 80 feet from the southerly line of the driveway, which was located on the westerly side of the road. At this point he glanced in his rear view mirror and saw at a distance estimated by him to be 600 feet, southerly of his truck, an automobile approaching in the middle of the road. He was unable to estimate at this distance either the speed, color, or kind of automobile that was proceeding in the same direction in which he was travelling. He gradually slowed down the speed of his truck from 30 miles per hour, extended his left arm through the left-hand window of the cab, and used his right arm to steer the truck to the left toward the entrance to the driveway. About 10 inches of his hand and arm extended beyond the left-hand side of the truck body. When he arrived at a point about 20 feet southerly of the center line of the driveway, he turned the front end of the truck westerly, to the left, making a normal turn toward the driveway. He proceeded to drive his truck toward the entrance of the driveway at about 15 miles per hour when he was struck by the oncoming automobile driven by the plaintiff's intestate. When the impact occurred, the left rear wheel of the truck was to the left of and the right rear wheel was on the center line of the highway, with the right front wheels off the tarvia portion of the highway on the dirt shoulder of the driveway.

The Cadillac automobile of plaintiff's intestate crashed into the center part of the rear housing, slightly to its right, with such force that the truck was catapulted into the air and upturned, landing with the top of the cab and body on the dirt shoulder on the left-hand side of the road and northerly of the driveway, with four wheels in the air and the truck facing in the opposite direction, or southerly. The automobile of the plaintiff's intestate crashed some 30 feet distant northerly of the truck into the guard rails and posts on the westerly side or left-hand side of the highway. The Cadillac automobile was completely smashed and wrecked with the engine driven back into the front seat of the automobile. Although an attempt was made to repair the truck, it was so badly damaged, with the frame and steel body sprung out of shape, that it was impossible to repair and the truck was thereupon discarded. The horn of the Cadillac was not sounded, nor was there any noise caused by the squealing of brakes or the screeching of tires.

In estimating the distance at 600 feet that the Cadillac was southerly of the truck, Mr. Barker placed it opposite the house of a Mrs. Dalarymple. Measurements subsequently made indicated that the house was located 550 feet southerly of the driveway so that the Cadillac was approximately 475 feet from the truck when it was first observed by Mr. Barker, when he was 75 feet from the driveway. Assuming these estimates of distances to be approximately correct, which was borne out by credible evidence, the Cadillac automobile travelled 550 feet while the truck travelled some 85 feet, in less than four seconds. These measurements alone corroborate the evidence that Moores was travelling in excess of 90 miles per hour at the time of the accident.

The plaintiff contends that the collision was caused by the negligence of the defendants in that the driver, Barker,

made the left-hand turn in front of the Moores car without adequate warning and so operated his truck as to mislead and deceive Moores as to the defendant's intentions. The defendants, on the other hand, contend that they were free from any negligence, and that the sole proximate cause of the collision and the attendant injuries and death of Moores was due to his own negligence. In any event, the defendants contend that Moores' negligence contributed to the collision and his consequent injuries and death.

■ The statute under which this action is brought did not change the substantive law relative to liability or non-liability of a tort-feasor. Field v. Webber, 132 Me. 236 at page 241, 169 A. 732, at page 735, states the well-settled law in this regard, as follows:

"At common law, in action of tort for negligence, the plaintiff has to prove, by a fair preponderance of all the evidence, not only that defendant was negligent, and harm without other agency resulting, but also to negative contributory negligence. Absence of proof of any of these elements precludes a recovery. With respect to cases like the present, a statute provides:

" 'In actions to recover damages for negligently causing the death of a person * * * the person for whose death * * * the action is brought shall be presumed to have been in the exercise of due care, * * * and if contributory negligence be relied upon as a defense, it shall be pleaded and proved by the defendant.' Rev.St. c. 96, § 50.

"This statute did not undertake to change the substantive laws of negligence. Cullinan v. Tetrault, 123 Me. 302, 305, 122 A. 770, 772, 31 A.L.R. 1330. Cases must still be decided upon all the evidence. Levesque v. Dumont, 117 Me. 262, 103 A. 737. The law allows a recovery against one who negligently causes the death of another, that other having been, at the time, in the exercise of ordinary care. The statute enacts a presumption of care; next, it casts upon the defendant the burden of overcoming such presumption, and proving want of care on the part of the deceased person. Danforth v. Emmons, supra, [124 Me. 156, 126 A. 821]. This shifting of the burden of proof works no change in the underlying principles of law. If a plaintiff's intestate's own want of ordinary care is proved to have been contributory to his death, plaintiff may not prevail. Jones v. Manufacturing Company, 92 Me. 565, 569, 43 A. 512, 513."

See also Greene v. Willey, 147 Me. 227, 86 A.2d 82.

■ Under all of the facts and circumstances of this case, this Court is of the opinion that the driver Barker acted as an ordinarily prudent person and was in the exercise of due care in executing a left turn on U. S. Highway No. 2 at the time of the accident. At the point that Barker first observed the Moores' car, there was ample opportunity, under ordinary circumstances, for Barker to safely execute a left turn. Barker, however, under these circumstances, was not bound to anticipate negligence on the part of Moores with regard to the operation of his car. Fernald v. French, 121 Me. 410, 115 A. 420; Shaw v. Bolton, 122 Me. 232, 235, 119 A. 801; Dill v. Androscoggin & K. R. Co., 126 Me. 1, 135 A. 248; Davis v. Simpson, 138 Me. 137, 23 A.2d 320. Nevertheless, Barker, having given adequate warning, had nearly completed a normal, properly executed left turn when the Moores car, travelling at a terrific rate of speed, collided with his truck. This Court concludes, therefore, that Barker was not negligent and that he and his employer are not liable to the plaintiff in this action.

■ Furthermore, this Court finds that the excessive speed of the Moores car, at the time of the accident, was so

unreasonable as to constitute a violation of the speed laws of the State of Maine. Considering this finding, all of the other facts and circumstances of this case, and having in mind the failure of Moores to give an audible warning before attempting to pass the truck, this Court is of the opinion that Moores, himself, was negligent in the operation of his car and that his negligence was the sole proximate cause of his injuries and attendant death.

It is therefore ordered, adjudged and decreed that judgment be and hereby is entered for the defendants, without costs.