Louis C. Levesque *vs.* Levite E. Pelletier.

Mabel E. Levesque *vs.* Levite E. Pelletier.

Louis C. Levesque *vs.* Benjamin Thibodeau.

Mabel E. Levesque *vs.* Benjamin Thibodeau.

Aroostook.　　Opinion June 29, 1932.

*Bernard Archibald,*
*John B. Pelletier,* for plaintiffs.
*Locke, Perkins & Williamson,*
*J. Frederic Burns,*
*O. L. Keyes,* for defendant Pelletier.
*Cook, Hutchinson, Pierce & Connell,*
*J. C. Madigan,* for defendant Thibodeau.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

BARNES, J.   Four actions, the injured woman against two defendants, her husband against same defendants, were tried together.

The injuries occurred at the overturning of defendant Pelletier's automobile, in the ditch of a highway in St. John Plantation, Aroostook County, immediately after defendant Thibodeau had passed the Pelletier car.

They were severe, Mrs. Levesque losing her right arm. The jury returned verdicts for her in the sum of $10,000 against each defendant, and for her husband, to reimburse him for expenditures in her behalf and for loss of consortium, in the sum of $2,000 against each defendant.

There is no contention that the amount of damages found is excessive.

The cases are here upon motions for new trials, on the ground that the verdicts are against evidence, and the weight of evidence.

The accident happened soon after three o'clock on the afternoon of September 17, 1930. Mrs. Levesque was a passenger in defendant Pelletier's car.

Defendant Pelletier's wife was driving the car, occupying the left front seat.

Mrs. Levesque, her guest, sat in the right front seat, and defendant Pelletier and Paul Michaud occupied the rear seat.

The car was running easterly, on a straight, level road, a State Aid, improved road. No vehicle or person was visible east of the Pelletier car, when defendant Thibodeau, coming from the west overtook and passed it. The accident followed at once. Thibodeau heard a crash, after he had passed the Pelletier car, and while he was still on the left of the middle of the road. He looked to the southerly side of the road, toward the rear and saw the car turning over on the shoulder of the road; and a commercial traveller, Mr. Lee, rounding a curve about four hundred feet in advance of the Pelletier car, saw it overturning.

Another witness, William Pelletier, from his dooryard, perhaps a hundred feet westerly of the spot where the car overturned, was the only eyewitness of the accident.

A Mr. Plourde, who was standing in a gravel pit, a little more than three hundred feet from the highway, heard a horn sounded and cars running on the road and saw the cars pass the mouth of the gravel pit road.

These all testified at the trial.

The status of Mrs. Pelletier, driving her husband's car, is admitted to be that of his servant or agent.

The negligence charged to defendant Pelletier in the writs against him is that his wife did not possess and exercise ordinary skill in driving, management and control of his automobile, and did recklessly, carelessly and at an excessive rate of speed operate the car.

In the cases against Thibodeau, the allegation of negligence is that at a time and place when the Pelletier car was so situated that due care would prevent an attempt to pass it, because there was not sufficient space between the left edge of the Pelletier car and the left edge of the travelled part of the highway, defendant Thibodeau, without warning, and without waiting until the Pelletier car should be turned to the right, recklessly, carelessly and at an excessive rate of speed, and without giving proper signals or warnings, did pass the Pelletier car and did so operate his car that the other was

by him crowded from the highway. There is no evidence of collision or contact of the cars.

Since no exceptions to the conduct of the case nor to instructions on the law were presented to us we are to decide upon the record before us only whether the findings of fact by the jury were supported by a fair preponderance of the evidence. In none of the cases at bar does contributory negligence of plaintiff appear.

Upon both car drivers it was incumbent that they exercise ordinary care in driving.

As the jury found the facts, they concluded each driver failed to use ordinary care, and that this failure, which is negligence, was the proximate cause of Mrs. Levesque's injuries.

In the guest cases the operator of the car must, "exercise in his own conduct, ordinary care which is that degree of care that the great majority of legally responsible persons, owing a legal duty to use care, or the type of that majority — that is to say, a person of ordinary intelligence and reasonable prudence and judgment — ordinarily exercises under like or similar circumstances." *Chaisson* v. *Williams*, 130 Me., 341, 156 A., 154, 156.

In the cases against defendant Thibodeau, he can be held negligent if he failed to observe the law of the road, provided such failure is found to have been a proximate, contributing cause of the accident, or if it is proven that some act of his which the ordinarily prudent man would not have done contributed to Mrs. Levesque's injury as a proximate cause thereof.

It is evident that the special conditions and circumstances at the time of this accident are of prime importance.

The roadway, its condition, the speed of the cars, these are to be scanned closely, that we may determine what the jury found as evidence of negligence.

First, as to the guest cases.

Mrs. Pelletier was driving a five-passenger sedan, a six-cylinder car, of 4,200 pounds weight, its four door windows all opened, on a straight stretch of road, with no other traveller within vision.

She occupied the middle of the road. From the record it appears that the road was what is known as a gravelled road, built of sandy material, very slightly crowned, probably seventeen feet wide from

the fringe of grass and weeds on one side of the wrought part to similar growth on the other, and perhaps nineteen feet in width from shoulder to shoulder, its surface, on the middle section, coated with gravel.

On either side were ditches, at the right a ditch about eighteen inches deep.

During the season of 1930 a coating of coarse gravel had been spread upon the road surface in the vicinity of the accident. The gravel was deepest in the middle of the road, a layer about four inches deep covering a middle lane, wider than an automobile, and thinning, as it was spread, toward the edges. Beyond the gravel, toward either edge it is fairly evident that a hard surface extended for about two feet to the shoulder of the road.

The gravel surface had been compacted and rolled down in a single traffic lane nearly upon the middle of the road. The remainder of the wrought part of the way showed no wheel tracks.

There is no doubt that the layer of gravel extended at nearly maximum depth for a short space outward from each wheel track, and that the wheel tracks were smooth ribbons of packed sand and gravel, beaten paths probably not wider than the tire of a large automobile.

Mrs. Pelletier testified that she had driven automobiles for ten years. Her home is in Fort Kent, and the road through St. John Plantation is one of the main highways to the village where she lives.

The condition of this road should have been well known to her, for according to her husband's testimony she had been making the trip to take him home "all the time."

She was driving her husband, a railroad engineer, homeward from St. Francis, where his daily run ended, and had invited Mrs. Levesque to accompany her. Michaud, a railroad fireman, was the other passenger.

The report is not definite as to the speed of either car as they passed the mouth of the gravel pit road.

The estimates of the speed of the Pelletier car that were given the jury varied from thirty miles to forty miles an hour.

It is apparent that Mrs. Pelletier was driving at high speed, and

all witnesses agree that her car was running in the smooth, hard wheel tracks.

All who were in her car testified that they did not hear any signal that a following driver desired to pass them.

Each testified that the first indication of the presence of the Thibodeau car was when its head appeared, passing the rear door of the Pelletier car, on its left side.

According to the testimony, before Mrs. Pelletier was aware of the coming of the Thibodeau car, her husband from the back seat said, "Give him the road," and, glancing to her left, she saw the Thibodeau car speeding by her.

The cars were then just east of the mouth of the gravel pit road, and Mrs. Pelletier testified that then, before she changed the course of her car, the front wheels of the Thibodeau car had got by her seat.

At her husband's suggestion, or command, Mrs. Pelletier acted.

She testified, "I dodge my wheel and I don't know how far," and it seems she did not lessen her speed.

Her husband testified that his wife noticed the passing car at the time he spoke, "and she hauled out to the side, probably a little more than she should have, and we struck in that loose gravel and went in the ditch."

Asked by his counsel how far his car proceeded, "along the road, in the road, before either of the wheels left the roadbed, after she saw Thibodeau," Mr. Pelletier replied, "We went in the ditch immediately."

Paul Michaud, plaintiff's witness, testified 'to a zigzagging course upon the roadbed, before the wheels reached the ditch, but when asked at what angle Mrs. Pelletier veered to her right, answered, "she made a sharp go to the right."

Mrs. Levesque testified that her driver gave the wheel "one yank to the right-hand side, and then she tried to get back onto the road and that is where she lost control of the car."

Two days after the accident, Lewellyn Willette, a member of the State Highway police, visited the place of the accident, observed certain marks indicating where it had occurred and made some measurements.

He testified that the point where the wheel ran over the shoulder of the road into the ditch was twenty-five feet east of the east line of the gravel pit road.

Mr. Plourde and William Pelletier testified that the Thibodeau car was by the side of the larger car when they crossed the mouth of the gravel pit road, and defendant Pelletier testified that he had just got by the mouth of the road when Thibodeau's car came into his sight.

So the jury was justified in finding it proven that the turn to the right, from the firm wheel tracks to the loose gravel was at a wide angle. Both right wheels dropped over the shoulder into the right-hand ditch.

The car ran on for sixty-three feet and until its right forward wheel was brought back onto the shoulder of the road, then tipped over off the road.

There is abundant evidence to justify the jury in finding that, at the speed at which her car was travelling it was negligence for Mrs. Pelletier to turn into the unstable surface of loose gravel at an angle that would bring her forward wheel into the ditch in so short a distance.

A driver, experienced in operating on a gravelled road, must be charged with knowledge that swerving, at speed, into loose, coarse gravel, is with risk of loss of control; to swerve at marked angle, with great risk.

A turning to the right that would direct her left wheels gradually to the right wheel track may have been prudent. But the rate of speed would be an important condition in determining the prudence of such turning.

The instant her car wheels left the wheel tracks they would be in the deepest portion of the layer of loose gravel.

Hence in each of the suits, *Louis C. Levesque* v. *Levite E. Pelletier*, and *Mabel E. Levesque* v. *Levite E. Pelletier*, the verdict must stand.

In considering the question of negligence on the part of defendant Thibodeau, factors other than those already discussed are to be considered.

He is in court to answer in damages only if it is proven that,

upon the highway at about the time of the accident, he did what the reasonably prudent man, in his position would not have done, or, if he failed to do what the reasonably prudent man would, then and there, have done.

At greater or less distance, immediately before the accident, he had followed the Pelletier car for a quarter of a mile of open, straight road.

At some point, probably not far from the William Pelletier house, he determined to overtake and pass that car.

He was then travelling in the compacted wheel tracks.

And from the record we conclude that then he must, or should have, realized that all four of his wheels must necessarily travel over or through loose gravel before his left wheels could reach the hard surface on the left side of the road. He is chargeable with knowledge that unless the speed of the leading car were reduced he must speed up materially in order to get into clear, ahead of it, before he should reach a turn in the road about four hundred feet beyond the gravel pit road.

Overtaking and passing a car is an everyday occurrence with one who drives upon a highway.

But it calls for caution, and the driver of the overtaking car proceeds to pass at his peril, and does not attempt to pass, if ordinarily prudent, unless the situation facing him is such as to reasonably assure an ordinarily prudent driver that the passing can be accomplished with safety to himself and to the leading car and all occupants of the road, who are also in the exercise of due care.

What would prudence suggest to Mr. Thibodeau as necessarily to be done before he should undertake to pass?

In two essentials our statutes give advice.

"The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.

"The driver of an overtaking motor vehicle not within a business or residence district as herein defined shall give audible warning with his horn or other warning device before passing or attempting

to pass a vehicle proceeding in the same direction." R. S., Chap. 29, Sec. 70.

It is not claimed that the defendant attempted to return to the middle of the road after passing. He passed, and without collision or contact with the leading car. He took the left side and there drove until he brought his car to a stop. Did he pass at a safe distance? This was for determination of the jury, on a fair preponderance of all the evidence.

The distance between the cars as he passed is not stated otherwise than "almost to touch," "close enough to bump," "very close," "It couldn't have been over two inches," and by the use of like expressions.

"When two persons are travelling in a highway in the same direction there is no rule of law that compels one to travel behind the other, or gives one the exclusive right to precede the other. The rear traveler may pass to the front whenever he may do so in safety, with the exercise of ordinary care." *Clifford* v. *Tyman*, 61 N. H., 508.

Defendant's car, a Ford of that year, was equipped with a horn afterward tested by the police and found to be "all right."

Did he give audible warning before attempting to pass? William Pelletier, called by the plaintiff, testified that he heard the horn.

Mr. Plourde, probably more than three hundred feet from the highway, also among plaintiff's witnesses, testified that he heard it. But all unite in describing the sound as weak.

The occupants of the leading car deny hearing any sound of horn.

The driver of an overtaking car is not obliged at all times to fall in behind and trail his leader. After suitable and audible signal, "The driver of a vehicle upon a way about to be overtaken and passed . . . shall give way to the right in favor of the overtaking vehicle." R. S., Chap. 29, Sec. 72.

If the jury found that defendant Thibodeau attempted to pass the leading car without giving audible warning and without waiting for the leading car to be withdrawn from the middle of a road but seventeen feet wide in the used part, this conclusion would properly affect their finding as to the degree of care he then exercised.

He testified to sounding his horn once, and at a point about a hundred feet west of the entrance to the gravel pit. True, he further said, "A few seconds after I blew my horn they started getting over towards the right."

In cross-examination he amplified this, stating that when he started to go by the Pelletier car, "I would say that one of their left wheels was right about where the right rut is." It may well be that the jury gave little weight to Mr. Thibodeau's testimony on this point. It may be they decided that the warning of the horn was inaudible to Mr. Pelletier and his driver; that it was negligence to attempt to rush by the leading car in the circumstances as they visualized them; that this negligence on the part of defendant Thibodeau was coupled with that of Mrs. Pelletier, and that its consequence and result was the unfortunate right ·turn that precipitated the car in the ditch, concurrent negligence as understood in law.

Interpreting the testimony as we must, in the light most favorable to plaintiff in each case, we can not find the verdicts unwarranted.

*Motion overruled in each case.*