Carroll,
Sept. 4, 1934.

ELSERCE A. GRAY *v.* FRANK M. GRAY.

*Coulombe & Coulombe* and *Crawford D. Hening* (*Mr. Hening* orally), for the plaintiff.

*Gay Gleason* (of Massachusetts) and *Bernard Jacobs* (*Mr. Jacobs* orally), for the defendant.

PEASLEE, C. J. I. "If there is no ground of action in the sovereignty where the tort is alleged to have occurred, there is none anywhere. ... To ascertain the rights resulting from acts done or omitted, attention must be paid to the circumstances under which the events took place; and one of the governing circumstances is the law of the place which characterizes the act. ... In like manner, when a right is claimed upon acts occurring in another country, courts look to the law of that country, not to extend the binding force of a foreign law beyond the territorial limits of the sovereignty to which it belongs, but to ascertain whether the right claimed exists or not. It is not the foreign law, but the rights acquired under it, which are enforced by the courts of another country; and this is true whether the question be one of contract, tort, or *status*." *MacDonald* v. *Railway*, 71 N. H. 448, 450, 451.

"If there is a conflict between the *lex loci* and the *lex fori*, the former governs in torts the same as in contracts, in respect to the legal effect and incidents of acts. ... Therefore, whatever would be a defence to this action if it had been brought in the state of Maine is a defence here, although it would not be if the cause of action had arisen in this state." *Beacham* v. *Portsmouth Bridge*, 68 N. H. 382.

For more than a hundred years this theory of the law has been followed in this state, whenever there has been occasion to apply it, or any part of it. *Wilson* v. *Rich*, 5 N. H. 455; *French* v. *Hall*, 9 N. H. 137; *Henry* v. *Sargeant*, 13 N. H. 321; *Laird* v. *Railroad*, 62 N. H. 254; *Leazotte* v. *Railroad*, 70 N. H. 5; *Kimball* v. *Kimball*, 75 N. H. 291; *Young* v. *Company*, 76 N. H. 582; *Hill* v. *Railroad*, 77 N. H. 151; *Stinson* v. *Railroad*, 81 N. H. 473; *Marshall* v. *Railroad*, 81 N. H. 548; *Lee* v. *Chamberlin*, 84 N. H. 182; *Precourt* v. *Driscoll*, 85 N. H. 280; *Small* v. *Railroad*, 85 N. H. 330; *Richards* v. *Richards*, 86 N. H. 273; *Blanchette* v. *Sargent*, ante, 15.

It has the final approval of the American Law Institute, Restatement, Conflict of Laws, s. 382 *et seq.* It is supported by all our eminent text writers upon the subject. Story, Conflict of Laws, s. 558; Dicey, Conflict of Laws, 21; Beale, Conflict of Laws, 112; Goodrich, Conflict of Laws, 189; Wharton, Conflict of Laws, s. 478 *b*; Minor, Conflict of Laws, s. 194. The American decisions are almost uniformly to the same effect. They are collected in 12 C. J. 452, and cross references. In three recent cases the precise question here involved has been decided adversely to the plaintiff. *Buckeye* v. *Buckeye*, 203 Wis. 248; *Dawson* v. *Dawson*, 224 Ala. 13; *Howard* v. *Howard*, 200 N. C. 574.

Against this array of authority it is strenuously argued that the decided cases are distinguishable; that much which has been said is *dicta;* that the theory is contrary to the English law, unsound in principle, unworkable in many situations and criticized by a group of present day writers.

It is true that none of our decisions involve the precise facts here presented, but several of them are indistinguishable in principle. In *Beacham* v. *Portsmouth Bridge,* 68 N. H. 382, the defendant was a wrongdoer, and by New Hampshire law the plaintiff was free from contributory fault. But since by Maine law his driving contrary to the Sunday law barred a recovery, he had no remedy here for an accident happening there.

In *Lee* v. *Chamberlin,* 84 N. H. 182, *Richards* v. *Richards,* 86 N. H. 273 and *Blanchette* v. *Sargent, ante,* 15 the defendants were held not to be accountable for ordinary negligence towards guest passengers, although they would be by the law of this state. The different law as to the incidents attaching to their status in Massachusetts and Vermont was held to determine the rights of the parties as to events occurring in those jurisdictions.

In *Precourt* v. *Driscoll,* 85 N. H. 280, the plaintiff was called upon to prove her own freedom from fault, in accordance with the law of Vermont, although by New Hampshire law she would have made a case by merely showing the defendant's negligence.

It is sought to distinguish the present case upon the ground that the act complained of was a delict, in the sense that it was not made innocent by Maine law; and the only reason a recovery could not be had in Maine is the spousal relation of the parties. As the parties are residents of New Hampshire, where spousal incapacity to sue has been abolished, it is argued that the wife's complaint for acts done in Maine may be brought into this state and suit upon it maintained here.

The argument fails to distinguish between status and the incidents which local law attaches to the status. The parties are husband and wife. That status they took with them into Maine. But the incidents of that status are those prescribed by the law of the place where transactions take place. As before pointed out, this rule has frequently been applied in tort actions where other relations were involved.

The guest passenger in an automobile remains such after crossing the state line into Massachusetts. But his recovery here for injuries caused by his host's ordinary negligence depends upon which side of the state line the accident occurred. If it happened in Massa-

chusetts, there could be no recovery, even though the parties are residents here and the suit is in this jurisdiction. *Lee* v. *Chamberlin, supra; Richards* v. *Richards, supra; Blanchette* v. *Sargent, supra.*

Every argument urged in favor of this plaintiff is applicable to these decided cases. The defendant's act is a delict by the *lex loci*. It would have been actionable if committed here; and, as to persons in general, it is actionable there. But because of the particular relation of the parties, the law there is that there is no cause of action in the special instance. The plaintiff fails here, as those plaintiffs failed, because there is no cause of action at the place where the acts complained of were done.

It should be observed that much of the plaintiff's argument is based upon the assertion that inability to recover in Maine is merely because suits between husband and wife are forbidden. Hence it is urged that recovery may be had by resort to a jurisdiction where such suits are allowed. But an examination of the Maine law shows that the rule is much broader. The theory adopted there is not merely that there is a prohibition of suit, but that the acts complained of do not give rise to any cause of action. There has been no breach of legal duty.

A suit for false imprisonment during coverture was brought by a divorced wife against her former husband. The court said: "The theory upon which the present action is sought to be maintained is, that coverture merely suspends and does not destroy the remedy of the wife against her husband. But the error in the proposition is the supposition that a cause of action or a right of action ever exists in such a case. There is not only no civil remedy but there is no civil right, during coverture, to be redressed at any time. There is, therefore, nothing to be suspended. Divorce cannot make that a cause of action which was not a cause of action before divorce. The legal character of an act of violence by husband upon wife and of the consequences that flow from it, is fixed by the condition of the parties at the time the act is done. If there be no cause of action at the time, there never can be any." *Abbott* v. *Abbott,* 67 Me. 304, 306, cited with approval in *Sacknoff* v. *Sacknoff,* 131 Me. 280. In the latter case a wife was denied recovery from the employer of her husband for injuries caused by the negligence of that employee.

II. The claim that the American rule is opposed to the practice in England is well founded. But the English law upon the subject is by no means clearly defined. All that is here claimed for it is that in a suit for a foreign tort recovery may be had according to English

law, unless the *lex loci* has made the act complained of innocent. This seems to be a splitting of the rule of accountability. The foreign law is noted and applied, in so far as treating the act as innocent is concerned; but if that obstacle is passed, the English law is then used, or may be, to supplement the foreign and give a cause of action. This theory never attained any recognition in this country. "No case in this country has been found where recovery in tort has been allowed for what was not the basis of an action by the lex loci delicti." Goodrich, Conflict of Laws, 190.

III. Much objection has been made, both by some recent writers and in argument here, against any theory of vested right or *obligatio*. If such theory were based upon the idea that a sovereignty is under legal compulsion to recognize the foreign cause of action, there might be force in the argument. While the proposition may sometimes have been stated in that extreme form, the common theory is that such recognition has resulted from the idea that it was the just and politic course to follow. It has been developed under the impulses of neighborliness and orderliness. It has become an accepted rule precisely as liability for negligence, once unknown, became a part of the common law.

Wrong theories for the rule may have been advanced. But the destruction of such men of straw does not affect the validity of the line of procedure they were supposed to defend. It stands upon its own intrinsic merits. No one denies that the parties may have vested rights, or obligations, in the jurisdiction where the transaction occurred. But because another sovereignty adopts the rule that it will enforce the right or deny recovery as the event would be according to the *lex loci*, it by no means follows that it is the law of the forum that such course is obligatory upon such sovereignty.

In reaching the conclusions stated in *Beacham* v. *Portsmouth Bridge*, 68 N. H. 382, it was not deemed essential to enter into a discussion of the territoriality of law, of the concept of it spatially, or of the claims of parties as vested rights, accrued in a foreign jurisdiction. The situation was a practical one. The problem was "one of judicial expediency" (*Saloshin* v. *Houle*, 85 N. H. 126, 130). Forty odd separate jurisdictions had given rise to pressing questions as to how rights and wrongs originating in one should be dealt with in another. A few simple ideas were sufficient to indicate the course to be taken. Local conduct should be governed by local law. Rules of conduct have no force to regulate acts done outside the jurisdiction which made the rules, save as their operation is enforced by control over

parties found within the jurisdiction. In the great majority of cases complaints of conduct are adjusted in the jurisdiction where the conduct took place. It is desirable that the remedy be the same, wherever the action is brought.

IV. It is contended that there is unpardonable inconsistency in enforcing foreign rights, whether of prosecution or defence, and at the same time declaring that the foreign law is not in force here. The ground has been gone over many times. The local law is that the foreign rights will be enforced. What those rights are depends upon the facts, and a part of the facts consists in the law under which the transactions took place.

But if it is still insisted that a proper designation of the process is that we thus enforce foreign law (*Saloshin* v. *Houle*, 85 N. H. 126), it does not affect the soundness of the procedure. We enforce the foreign law because it is our law that the foreign law shall govern the transactions in question. "For the purposes of the case the foreign law becomes the local law." *Saloshin* v. *Houle, supra*, 130. It has been concluded that it shall so govern for the reasons before stated. This is not importing foreign law. It is only giving to it the legitimate effect upon transactions occurring where it is in force. The logical alternative is not found in the application of local law to a foreign transaction, but in a refusal to deal with that transaction at all. If it is to be justiciable here, it should be upon the basis of what it is there.

The other view, that to some indefinite degree our law should govern the foreign transaction, would export our law into foreign territory. The reasonable conclusion which has been reached is that there should be neither export nor import, that, generally speaking, the law is territorial, conceived of spatially as governing within the jurisdiction, and creating there rights and obligations which will be respected and enforced elsewhere. Judge *Cardozo* sums the matter up in a sentence. "The plaintiff owns something and we help him to get it." *Louks* v. *Company*, 224 N. Y. 99, 110.

V. The critics of the American rule affect to find much inconsistency in the suggested refusal (Goodrich, Conflict of Laws, 24; Am. Law Inst., Restat., Conflict of Laws, s. 7) to follow the *lex loci* as to the applicability of foreign law to local transactions. The proposition advanced here is that if by the *lex loci* the plaintiff could recover there if he would have that right by the law of his domicil, though not if domesticated, he should recover in other jurisdictions, if they profess to apply the *lex loci*. This is upon the theory that the whole or none of the *lex loci* should be applied.

It being the rule in some jurisdictions that in a suit by a non-resident upon a cause arising locally his capacity to sue will be determined by looking to the law of his domicil rather than to the local law, it is urged that this feature (called the doctrine of *renvoi*) should be treated the same as the rest of the *lex loci*. If that law looks beyond local limitations to broader or otherwise different rules of the party's domicil, it is argued that the same course should be followed by the court in another jurisdiction when called upon to adjudicate disputes which arose under such circumstances. That is, in determining the applicability of foreign law, the court should be governed by that foreign law as to the applicability of foreign law. This idea is urged as calling for the recognition of *renvoi* under such circumstances. It has not as yet met with judicial approval.

We do not understand it is claimed that the doctrine of *renvoi* ought to be adopted. One of the authors upon whose reasoning the plaintiff relies says: "The *renvoi* doctrine is, therefore, no part of the Conflict of Laws of the United States. Its introduction into our law would be most unfortunate on account of the uncertainty and confusion to which it would give rise in the administration of justice and its demoralizing effect upon the future development of the Conflict of Laws." The *Renvoi* Theory (Lorenzen), 10 Col. Law Rev. 344. It is advanced in argument here as a feature of existing law, in some foreign jurisdictions, and its recognition where existing is urged as a logical part of the vested right theory, and as showing that, thus encumbered, that theory should be rejected. It is unnecessary to determine the validity of the argument. If its soundness were assumed, and recognition of *renvoi* should be treated as a part of our rule applying the *lex loci*, there would be two sufficient answers here. The plea demurred to states "that under the laws of the State of Maine, the plaintiff being the wife of said defendant is barred from maintaining this action." This leaves no room for speculation upon the matter. Beyond this, it is conceded in the plaintiff's argument that there is no decision in Maine bearing upon the doctrine of *renvoi*. Nor is there any claim that it is a part of a generally prevailing common-law doctrine. If the matter were open for consideration, the plaintiff would fail for lack of proof that the doctrine prevails in Maine.

But it will be said that these conclusions do not meet the whole issue. The argument that consideration of *renvoi* should be a part of any theory of applying the *lex loci*, and that the theory thus embarrassed is unworkable, has not been answered. The conclusion sought to be drawn from these propositions is that they show that

the whole theory of applying the *lex loci* is unsound and should there-fore be abandoned, and actions for foreign torts should be decided according to local law.

One answer to this is that the rule that the *lex loci* shall apply is so firmly established that it should be followed, unless very grave de-fects therein call for reform. We see no such defects. Whether it should include *renvoi* or not is a matter to be decided when a case arises which presents that question. In the instant case there is no occasion to go further than to inquire whether the obstacle proposed is insuperable. If it does not appear to be so, we need not be appre-hensive that adherence to the present line of procedure will unduly embarrass the court of the future when called upon to decide the propounded problem.

It is undoubtedly true that following the doctrine of *renvoi* to a logical extreme can, in some situations, result in an endless reference back and forth. The dilemma thus presented is something of an answer to the theorists who justify the application of the *lex loci* upon the idea of a vested right. The writers relied upon by the plaintiff have used it largely for this limited purpose. They recognize the desirability of a general application of the *lex loci* in actions for torts. Their quarrel has been with the theory of those who would account for such procedure upon the basis of a vested right or *obligatio*.

Once the doctrine of *obligatio* is disregarded, and recognition of the *lex loci* is put upon its true foundation, there is no difficulty. The *lex loci* is applied because this is deemed to be the sensible course to pursue. When a point is reached where further application is futile and ridiculous the process is cut short.

No rule or set of rules has yet been devised which will make the conflict of laws a logical whole. There are places where logic has to give way to evident facts. In these places horse sense has prevailed over the deductions of the schoolmen. It should continue to do so.

Whether, upon the issue of applying foreign law we should follow our own views entirely, or adopt those expressed in the *lex loci* which are pertinent, is, like most of the questions involved in this case, a matter of what is sound policy. That problem will no doubt be solved in the future, and some definite rules will be evolved, as there have been already on the main issue of following the *lex loci*.

As before stated, there is no occasion here to determine whether we should apply a Maine doctrine of *renvoi*, since there is no evidence that such a doctrine exists.

VI. The novel complaint is made that the foregoing conclusions

upon the application of the *lex loci* set up fixed rules. The proposal is that instead thereof the whole matter be left to the discretion of the court to apply either the foreign or the domestic law to the individual case as "reason, justice and expediency" require. That might well be taken as the guide for determining what should be done in the first stages of the development of the law. But as the law progresses definite rules are evolved in the course of the frequent application of those tests. That is the situation here. It has become settled that reason, justice and expediency require that causes of action for foreign torts be dealt with as hereinbefore indicated.

*Exception overruled.*

All concurred.