MARY PRINGLE *vs.* WILLIAM E. GIBSON.

PETER K. PRINGLE *vs.* WILLIAM E. GIBSON.

Washington.     Opinion, December 13, 1937.

*Stern, Stern & Stern,* for plaintiffs.
*James E. Mitchell,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J.   On report. Actions for personal injuries sustained by the plaintiffs as a result of an automobile accident while plaintiffs were riding as gratuitous passengers in the automobile of the defendant. The accident occurred September 26, 1935, in the Province of New Brunswick. The plaintiffs are residents of that province. The defendant is a citizen of Maine. The defense pleaded and proved the act of the legislature of New Brunswick passed in 1934.

"The owner or driver of a motor vehicle other than a vehicle operated in the business of carrying passengers for hire or gain, shall not be liable for any loss or damage resulting from bodily injury to or death of any person being carried in or upon, or entering or getting on or alighting from such motor vehicle."

The position of the defense is that the plaintiffs as citizens of a foreign state are seeking the aid of the courts of Maine to enforce a liability against a citizen of Maine which is denied them by the law of their own jurisdiction.

The general rule, long established, has been recently reaffirmed in *Winslow* v. *Tibbetts,* 131 Me., 318, 162 A., 785, 786.

"It is elementary law that the rights of the plaintiffs to recover are controlled by the law of the place where the injuries were received, and the law of the jurisdiction where relief is

sought determines the remedy and its incidents, such as pleading, practice and evidence."

Counsel for plaintiffs assent to the existence of this rule, but assert that the law of New Brunswick does not govern for one or more of the following reasons: It merely affects the remedy; the acts of the defendant were wrongful under the motor vehicle laws of New Brunswick and constituted a violation of its criminal code; the statute is unconstitutional both in New Brunswick and Maine; it is against public policy of this state and will not be enforced by our courts. Further, that if any of the foregoing contentions are sustained and the New Brunswick statute does not apply, then the plaintiffs maintain that the case is to be decided by the common law of New Brunswick, and in the absence of proof to the contrary, the legal presumption is that the common law of both jurisdictions is the same.

The arguments and briefs of counsel show great research and ingenious reasoning. So urgently are emphasized close refinements as almost to be confusing. The Court finds relief in the reflection of Chief Justice Peaslee in *Gray* v. *Gray*, (N. H.), 174 A., 508, that:

"No rule or set of rules has yet been devised which will make the conflict of laws a logical whole. There are places where logic has to give way to evident facts. In these places horse sense has prevailed over the deductions of the schoolmen. It should continue to do so."

As to the first claim that the New Brunswick statute merely affects the remedy; it is true that distinctions between matters pertaining to the remedy and those going to the basis of the action are sometimes difficult to determine, yet common sense demonstrates that a law which destroys a cause of action entirely, clearly comes within the *lex loci* rule. If the right is absolutely abrogated, then the law of the forum does not give it new life to determine "its incidents such as pleading, practice and evidence."

"Whether an act is the legal cause of another's injury is determined by the law of the place of wrong."

"If no cause of action is created at the place of wrong, no recovery in tort can be had in any other state."

"A liability to pay damages for a tort can be discharged or modified by the law of the state which created it."

Restatement, Conflict of Laws, Pars. 383, 384 and 389.

While it is a general and well-settled rule that remedies are regulated and governed by the *lex fori, Owen* v. *Roberts,* 81 Me., 439, 17 A., 403 ; *Miller* v. *Spaulding,* 107 Me., 264, 78 A., 358, and that included in the procedural policy of the state are statutes of limitations, Restatement, Conflict of Laws, Pars. 604 and 605, yet the distinction is pointed out in *Conn. Valley Lumber Co.* v. *R. R. Co.* 78 N. H., 553, 103 A., 263, that it is when the statute relates to the remedy and does not obliterate the right of action that such right continues to exist.

The next point relied upon is that the defendant violated the criminal code of New Brunswick with regard to the speed of his car, inadequate brakes, reckless and negligent operation, operating in a manner to endanger life and limb, and by wanton or furious driving or other wilful misconduct or wilful recklessness causing bodily harm.

The plaintiffs rely upon *Machado* v. *Fontes,* 2 Q. B., 231, as establishing the principle that an action for damages would lie in England for a crime committed in a foreign country, even though the law of that country gave no private action for damages.

The doctrine of this case finds little, if any, support in the courts in this country. Goodrich, Conflict of Laws, Sec. 92, says : "There is no American authority for the modification." It is not necessary to discuss whether it should have force or applicability here because the record lacks proof that any of the acts of the defendant constituted a criminal offense. A necessary element to constitute a violation of the criminal code in New Brunswick, is criminal intent or *mens rea.* Such is the testimony of the expert, admitted in accordance with our rule, as that of a competent witness learned in the law of that jurisdiction. *Owen* v. *Boyle,* 15 Me., 147. The facts here disclose nothing more than civil negligence.

The third point raised is that the statute is null and void, both in New Brunswick and in Maine, being in contravention of guarantees under the Constitution and at common law.

Under the British-North America Act, which defined the sub-

jects of legislation assigned to the provinces, there are included "property and civil rights in the province." That the Act in question was within the category of legislation delegated to the province, can not be gainsaid. From the testimony of the expert, it appears that no case involving this statute has been adjudicated, and that the provincial court has not passed on the validity of the law. In the province, the Act remains in full force and effect until repealed or invalidated. The claim that it must be regarded as unconstitutional in Maine is woven into the question as to whether it should or should not be upheld upon the principle of comity and the exceptions thereto.

This brings us to the last contention, that the law is repugnant and offensive to the public policy of this state and should not be enforced by our courts.

No law has any effect of its own beyond the limits of the sovereignty from which its authority is derived. Ordinarily,

"We enforce the foreign law because it is our law that the foreign law shall govern the transactions in question. For the purposes of the case, the foreign law becomes the local law." *Gray* v. *Gray*, supra.

This is not an absolute rule. Whether recognition and effect shall be given to the foreign law by the courts of this state depend upon the principles of comity. Comity has been defined by Mr. Justice Gray in *Hilton* v. *Guyot*, 159 U. S., 113 at 163, 16 S. Ct., 139, 143, as:

"neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Perkins* v. *Perkins*, 225 Mass., 82, 86, 113 N. E., 841; *Wooster* v. *Manufacturing Co.* 39 Me., 246; *Long* v. *Hammond*, 40 Me., 204; *Chafee* v. *Bank*, 71 Me., 514.

Justice Wiswell in *Corbin* v. *Houlehan*, 100 Me., 246, 61 A., 131, in a case to recover for the price of intoxicating liquors bought in another state and intended for sale here in violation of our law, said:

"It is a fundamental and elementary rule of the common law that courts will not enforce illegal contracts, or contracts which are contrary to public policy, or which are in contravention of the positive legislation of the state."

And quoting with approval from *People* v. *Martin*, 175 N. Y., 315, 67 N. E., 589.

"Where foreign laws are in conflict with our own regulations, or our local policy, or do violence to our views of religion or public morals, or may do injustice to our citizens, they are not to be regarded in this state."

Under these guiding principles, we find that the statute of New Brunswick interposed in defense is controlling and prevents a recovery in this action, unless, according to our concepts it is a denial of justice and subversive of our public policy. Under the common law of this state, a gratuitous passenger is entitled to recover upon proof of his own due care and of ordinary negligence on the part of the defendant. In many states laws have been passed limiting the right of recovery, in others the courts have adopted a more stringent rule than ours. An enlightening discussion is found in *Howard* v. *Howard*, 200 N. C., 574, 158 S. E., 101:

"The fact that the law of two states may differ, does not necessarily imply that the law of one state violates the public policy of the other. . . . To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interest of our own citizens."

Further elaboration of this principle is found in *Loucks* v. *Standard Oil Company*, 224 N. Y., 99, 120 N. E., 198 in an opinion by Cardozo, J.

The U. S. Supreme Court in *Silver* v. *Silver*, 280 U. S., 117, 50 S. Ct., 57, in an action challenging the constitutionality of a Connecticut statute which exempted automobile owners from liability for injuries to guest passengers unless the conduct of the owner was intentional or in reckless disregard of their rights, held:

"The constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object. . . . We are not unaware of the increasing frequency of litigation in which passengers carried gratuitously in automobiles, often casual guests or licensees, have sought the recovery of large sums for injuries alleged to have been due to negligent operation. . . . Whether there has been a serious increase in the evils of vexatious litigation in this class of cases, where the carriage is by automobile, is for legislative determination, and, if found, may well be the basis of legislative action further restricting the liability. Its wisdom is not the concern of courts."

Our Court has given effect to laws of other states which substantially limit the right of action in guest cases. In some instances plaintiffs are found to be without remedy when they would have one had the accident occurred in this jurisdiction. The facts in the case at bar as disclosed by a careful reading of the record, fail to show that there was wilful or wanton conduct on the part of the defendant. We can not say that application of the statute of New Brunswick in the instant case is against good morals, natural justice or is prejudicial to our citizens. Instead, we conclude that the defendant in this case, a citizen of Maine, is entitled to the protection accorded him by the law where the alleged tort was committed. In accordance with the terms of the report, the entry in each case will be

*Judgment for defendant.*