### Clifford BEAULIEU

### v.

### Roger B. BEAULIEU.

Supreme Judicial Court of Maine.

May 27, 1970.

Marden, Dubord, Bernier & Chandler, by Bruce W. Chandler, Waterville, for plaintiff.

Mahoney, Desmond, Robinson & Mahoney, by William B. Mahoney and M. Roberts Hunt, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, DUFRESNE, WEATHERBEE and POMEROY, JJ.

DUFRESNE, Justice.

This action arose out of an automobile accident that occurred in the Commonwealth of Massachusetts. The agreed statement of facts in support of the complaint avers that on January 8, 1967 while the plaintiff was riding as a passenger in his father's automobile, the father's negligence in approaching a right-hand curve on Route 9 in Newton caused the automobile to skid upon the slippery road and strike a telephone pole located on the left side of the road, causing the plaintiff's injuries for which he now seeks compensation. The parties agree they both are presently residents of the State of Maine and were so at the time of the accident. Their trip to Massachusetts was to afford the plaintiff the occasion to see his brother in Newton concerning a job interview. They had planned to return to the State of Maine where their journey had its origin. As part of the agreed statement of facts, the plaintiff concedes that his claim is not grounded upon any factual setting of gross negligence. The defendant's motion to dismiss under Rule 12(b) (6), M.R.C.P. raises a legal issue of conflict of laws, whether the substantive law of the State of Maine or that of the Commonwealth of Massachusetts is applicable in determining the rights and liabilities of the parties in light of the fact that the plaintiff's cause of action is dependent upon proof of wrongful conduct amounting to no more than ordinary negligence. Although the agreement is silent thereon, we infer from the parties' domicile in Maine that the vehicle was registered and garaged in this State, and, if insurance coverage was obtained to secure protection against accidental injuries arising out of its operation, the same was issued in this State. We additionally infer that the defendant had a Maine operator's license. The case is with us on report under Rule 72, M.R.C.P.

Massachusetts, as part of the development of its common law, adopted the rule, that in order to recover from his host a guest has the burden to establish gross negligence. Massaletti v. Fitzroy, 1917, 228 Mass. 487, 118 N.E. 168; Falden v. Crook, 1961, 342 Mass. 173, 172 N.E.2d 686. The Massachusetts doctrine of gross

negligence is not recognized as a part of the law of this State. Winslow v. Tibbetts, 1932, 131 Me. 318, 162 A. 785.

Here, in guest cases the host-operator must exercise in his own conduct ordinary care, which is "that degree of care that the great majority of legally responsible persons, owing a legal duty to use care, or the type of that majority— that is to say, a person of ordinary intelligence and reasonable prudence and judgment—ordinarily exercises under like or similar circumstances." Levesque v. Pelletier, 1932, 131 Me. 266, 161 A. 198; Chaisson v. Williams, 1931, 130 Me. 341, 156 A. 154; Avery v. Thompson, 1918, 117 Me. 120, 103 A. 4. There are no degrees of care and no degrees of negligence in this State. Nadeau v. Fogg, 1950, 145 Me. 10, 70 A.2d 730. Furthermore, at the time of the accident, Maine had enacted a comparative negligence statute, which permits a person who suffers damage as a result partly of his own fault and partly of the fault of another to recover such proportionate part of his total damages as the defendant's share of responsibility in causing the damages bears to the whole damages, providing the claimant is not "equally at fault." Thus, there is a clear conflict between the law of Maine and that of Massachusetts and the question is which one governs.

The defendant claims that the issue was settled long ago in Winslow v. Tibbetts, supra, when this Court peremptorily stated the applicable rule of conflict of laws in these terms:

"It is elementary law that the rights of the plaintiffs to recover are controlled by the law of the place where the injuries were received, and the law of the jurisdiction where relief is sought dermines the remedy and its incidents, such as pleading, practice, and evidence."

At the time of Winslow v. Tibbetts, supra, the choice-of-law rule in cases, such as the instant suit, under the great weight of judicial authority was settled and known as lex loci delicti which invariably allowed the law of the place where the injury occurred absolute control. Restatement, Conflict of Laws, ss. 377–383 (1934). It was assumed that the law of the situs created the cause of action and necessarily determined the extent of the liability, whether the disputed issues involved conduct, survival of actions, applicability of a wrongful death statute, immunity from liability or other rules. The rule was based upon a vested rights theory, i. e. rights originating and attaching in the foreign state by reason of a breach of duty arising under foreign law. It is in that atmosphere of categorical appliance of the lex loci delicti that this Court reaffirmed Winslow v. Tibbetts in Pringle v. Gibson, 1937, 135 Me. 297, 195 A. 695, and denied recovery to residents of the Province of New Brunswick against their Maine host where New Brunswick law barred recovery of damages for personal injuries received by gratuitous passengers as a result of their host's conduct in the operation of a motor vehicle. When applying the traditional lex loci delicti rule in conflict-of-law cases, this court in *Pringle* recognized that the law of the place of wrong had no extraterritorial force and became the law of the case by adoptive choice of the forum court. Under principles of comity "the foreign law becomes the local law," cited the Maine Court. Gray v. Gray, 87 N.H. 82, 1934, 174 A. 508.

Although allowing in *Pringle* that it had given effect to laws of other states which substantially limited the right of action in guest cases, (Winslow v. Tibbetts, supra), this Court concluded its decision with the following theme:

"We cannot say that application of the statute of New Brunswick *in the instant case* is against good morals, natural justice or is prejudicial to our citizens. Instead, we conclude *that the defendant in this case, a citizen of Maine, is entitled to the protection accorded him*

*by the law where the alleged tort was committed."* [Emphasis supplied.]

In Glazer, Chandler v. Grob, 1939, 136 Me. 123, 3 A.2d 895, no issue of conflict of laws developed as the parties conceded the applicability of the traditional rule of lex loci delicti. Thus, our Court has applied as the law of the forum and of the case before it the law of the place of the wrong on the theory that the law of the situs governs the substantive rights of the parties, as if these rights had become vested from the time of the occurrence of the event.

But in its search for the proper rule to apply in its courts as the local law of the case does the forum state properly discharge its duty to the litigants and to the states involved in the conflict-of-law choice when it follows the arbitrary stereotyped course of the lex loci delicti? Does not the choice of the appropriate rule to be applied in the case before the court depend upon an analysis of the respective interests of the litigants and the involved states and an enlightened conclusion therefrom made after the proper balancing of the several competing interests? In what has been characterized as the ideal case for the adoption of the new flexible approach to choice-of-law rule in multistate-interest occurrences, the instant cause portrays the usual factual setting where the law of the place of the wrong fails to do justice between the parties litigant. All authorities in conflict of laws so admit and even the courts which upon reconsideration have refused to depart from the traditional rule so concede.

For these reasons, we believe that a review of our position in Winslow v. Tibbetts, supra, and Pringle v. Gibson, supra, is warranted. The American way of life during the last 30 years has changed so much in our traveling habits, whether by car, plane or boat, that we are not surprised litigants question the adequacy of an ancient rule of the good old days. We must decide anew whether the traditional rule of lex loci delicti, (the law of the

place of the wrong invariably controlling regardless of the issues before the court), fully satisfies the present needs of a motoring society accustomed to fast, frequent and distant travel and at the same time subjected to ever-increasing motor vehicle injuries and fatalities.

The first objection to modification is stare decisis. The underlying philosophy of this rule has been well stated in Jordan v. McKenzie, 1915, 113 Me. 57, 92 A. 995, in the following terms:

"Litigants have a right to transact business with reference to the law enunciated by the court. Most valuable property rights may be predicated upon the law, as thus declared. These rights should not be impaired nor sacrificed by a reversal or modification of the law except upon cogent and necessary reasons. Stability of the law should be the one great outstanding feature of jurisprudence upon which the profession as well as the people should have a right to rely."

Although adherence to the principle of stare decisis is generally a wise course of judicial action, it does not irreversibly require that we follow without deviation earlier pronouncements of law which are unsuited to modern experience and which no longer adequately serve the interests of justice. Furthermore, there should be greater readiness to abandon a rule of doubtful adequacy in dispensing exact justice, when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants. See, Cardozo, The Nature of the Judicial Process 150–151 (1921). In these days of tourism and extensive interstate automobile traffic, especially between neighboring states, to say that the parties relied upon a particular pre-selection choice-of-law rule to apply to a fortuitous and unintended automobile accident after the fact would be contrary to the realities of the situation, except perhaps that the parties, if they had any expectations, would have

contemplated the law of their common domicile where the automobile was licensed, garaged or insured, to be the applicable law under any and all circumstances. See Weintraub, "A Method for Solving Conflict Problems—Torts," 48 Cornell L.Q. 215, 220, 227 (1963).

A minority of courts, which have reconsidered the problem, have retained the old rule due to their unwillingness to depart from established precedent. They concede that the application of the hard and fast rule of the law of the place of the wrong, on occasion such as in the instant case, will produce unjust results, but view the doctrine of stare decisis as a legal block to modification, deferring any change of policy to legislative action. See, Landers v. Landers, 1966, 153 Conn. 303, 216 A.2d 183 (interspousal immunity); Friday v. Smoot, 1965, 211 A.2d 594, (Del.), (guest statute); White v. King, 1966, 244 Md. 348, 223 A.2d 763 (guest statute); Cook v. Pryor, 1968, 251 Md. 41, 246 A.2d 271 (guest statute); Abendschein v. Farrell, 1969, 382 Mich. 510, 170 N.W.2d 137 (guest statute); Shaw v. Lee, 1963, 258 N.C. 609, 129 S.E.2d 288 (interspousal immunity); Oshiek v. Oshiek, 1964, 244 S.C. 249, 136 S.E.2d 303 (interspousal immunity). See, Annotation, A.L.R.3d, Lex Loci Delicti, p. 603, § 3, at page 614. This tact does not carry persuasion with us.

A second argument for retaining the old rule is suggested in the ready and easy answer it provides in any choice-of-law problem. But such a reason has no appeal in a court of justice. Assuming, however, that multiple variations of the facts of the instant case would make more difficult the judicial determination of the state having the more significant relationships or contacts with the parties and the occurrence, we view the problem as no more formidable than many other legal entanglements which must be resolved by our courts. The application of the law of the place of wrong presents equally complicated situations for our Maine courts where states of the place of injury have guest statutes, so-called. It

is no easier task, if not an insuperable one, for our courts to decide whether the doctrine of gross or ordinary negligence must be applied, as this problem may depend under the law of those states on minuscule nuances of benefits involved in the guest-host relationship. For an example of some of the difficulties experienced by the Massachusetts Court in this area, one may turn to examples of indirect pecuniary benefits entitling recovery for ordinary negligence as opposed to benefits associated with mere companionship or social intercourse. See, Taylor v. Goldstein, 1952, 329 Mass. 161, 107 N.E.2d 14; Bagley v. Burkholder, 1958, 337 Mass. 246, 149 N.E.2d 143.

In Maine, liability is imposed in the host-guest situation. One of the reasons for this State policy is that the wrongdoer should bear the cost of an injury to another, including his passenger, occasioned by his causal fault, unless such other person is equally at fault. In light of the policy considerations which underlie the ostensibly conflicting laws of Maine and Massachusetts involved in the present case, it is perfectly clear that Maine has the only real interest in whether recovery of damages should be permitted. The application of Massachusetts law would defeat a genuine interest of this State (the forum state) without serving any legitimate interest of Massachusetts (the tort state).

Our Legislature has manifested such grave concern respecting injuries arising from the operation of motor vehicles upon the highways of this State that it enacted a financial responsibility law to facilitate recovery of damages for innocent victims of this motor age. This strong State policy applies to all negligent drivers where compensation is not forthcoming by reason of no insurance coverage and want of personal financial responsibility. This policy benefits the gratuitous passenger as well as any other person injured in an automobile accident. Maine courts have a definite interest in fostering such a strong public policy, especially between Maine citizens. On the other hand, Massachusetts has no real con-

cern in the application of its rule of gross negligence to the guest-driver relationship of the parties to this litigation. The trip over her highways was of a temporary character and no Massachusetts host, insurer or other domiciliary of that Commonwealth is involved. In fact, the application of Maine law advances Massachusetts highway-safety policies, in that Maine law requires a higher standard of care in the host-passenger situation than Massachusetts does and thus would subserve the interests of that Commonwealth in promoting safety within her borders. The Massachusetts Court in stating the policy factors motivating its adoption of the rule of gross negligence in Massaletti v. Fitzroy, supra, said: "Justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. * * * justice requires that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing." Thus, the Massachusetts policy in lowering the standard of conduct of the host in the gratuitous passenger relationship is tantamount to a partial immunity from responsibility for the host's wrong. The host's conduct remains a tortious wrong for which he would be responsible to persons other than his gratuitous passenger such as his other paying guest, the pedestrian on the way or the other motorist injured by reason of the same misconduct, in which event even under Massachusetts doctrine divergent rules of responsibility would necessarily be applied because of the host's partial immunity. Massachusetts may be concerned in enforcing such immunity in favor of Massachusetts hosts and their insurers but its policy will not be impinged in the least if Maine law is applied to the host-guest relationship of the parties to this litigation in a Maine court, where the relationship itself originated in Maine between Maine domiciliaries.

In this day of rapid transportation, whether by land or air, the rights and liabilities of the parties as to each other should not vary from state to state as the parties journey through the country on the basis of factors in no wise related to the public policy of the state most intimately concerned or associated with their relationship. We concede that the tort state, when the application of the rules of the road in that state are involved, would be primarily concerned in determining what is wrongful conduct or negligence, to promote its interests in the safe operation of vehicles on its highways; but in the instant case the degree of negligence of the host is unrelated to the policies of the tort state, Massachusetts, while it is most significant to the governmental interests of the forum state, Maine.

The appellate courts of various jurisdictions which have recently reexamined their position in conflict-of-law cases, in a ratio of at least 2 to 1, have recognized the deficiencies of the rigidity of the lex loci delicti doctrine, discarded it and have substituted for it the rule of "most significant contacts and relationships" in resolving the choice of substantive law in cases where a conflict of law exists. This modern rule presents more flexibility by permitting an analysis of the policies and interests underlying the particular conflict-issue before the court. See, Richards v. United States, 1962, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492; Armstrong v. Armstrong, 1968, Alaska, 441 P.2d 699 (interspousal immunity); Schwartz v. Schwartz, 1968, 103 Ariz. 562, 447 P.2d 254 (interspousal immunity); Reich v. Purcell, 1967, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (wrongful death statute); Myers v. Gaither, 1967, D.C.Ct. of App., 232 A.2d 577 (D.C. statute respecting leaving keys in motor vehicle); Wartell v. Formusa, 1966, 34 Ill.2d 57, 213 N.E.2d 544 (interspousal immunity); Watts v. Pioneer Corn Co., 1965, 7th Cir., 342 F.2d 617 (applying Indiana law in wrongful death case); Fuerste v. Bemis,

1968, Iowa, 156 N.W.2d 831 (guest statute); Wessling v. Paris, 1967, Ky., 417 S.W.2d 259 (guest statute); Kopp v. Rechtzigel, 1966, 273 Minn. 441, 141 N.W.2d 526 (guest statute); Mitchell v. Craft, 1968, Miss., 211 So.2d 509 (comparative negligence statute of the forum as against the common law doctrine of contributory negligence of the tort state); Clark v. Clark, 1966, 107 N.H. 351, 222 A.2d 205 (guest statute); Mellk v. Sarahson, 1967, 49 N.J. 226, 229 A.2d 625 (guest statute); Pfau v. Trent Aluminum Co., 1970, 55 N.J. 511, 263 A.2d 129 (guest statute); Babcock v. Jackson, 1963, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (guest statute); Macey v. Rozbicki, 1966, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (guest statute); Tooker v. Lopez, 1969, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (guest statute); Casey v. Manson Construction and Engineering Co., 1967, 247 Or. 274, 428 P.2d 898 (loss of consortium action by wife); Griffith v. United Air Lines, Inc., 1964, 416 Pa. 1, 203 A.2d 796 (survival acts in airplane case); Woodward v. Stewart, 1968, R.I., 243 A.2d 917 (guest statute); Wilcox v. Wilcox, 1965, 26 Wis.2d 617, 133 N.W.2d 408 (guest statute); Conklin v. Horner, 38 Wis.2d 468, 157 N.W.2d 579 (guest statute).

The overwhelming majority of commentators in the field of conflict of laws are opposed to the retention of the place of injury rule. Their various approaches and methods in formulating the modern rule

have been analyzed in Clark v. Clark, N.H., 1966, 107 N.H. 351, 222 A.2d 205, supra, Griffith v. United Air Lines, Inc., Pa., 1964, 416 Pa. 1, 203 A.2d 796, supra, and reference to these decisions and the respective works of the authorities cited in the footnote may be of some advantage.[1]

■ Comparing the relative "contacts" and "interests" of Maine and Massachusetts with the parties and the occurrence in this litigation respecting the conflict-issue of responsibility of a host to his guest, we readily observe that Maine's contacts are quantitatively and qualitatively greater and her governmental interest is of major significance, while Massachusetts contacts are merely fortuitous in that the accident happened there and her concerns, if any, are minimal. The present action involves injuries sustained by a Maine guest as the result of the negligence of a Maine host in the operation of an automobile undoubtedly garaged, licensed and covered, if insured, by a policy issued in Maine for operation in Maine and the sister states, in the course of a temporary journey which began and was to end in Maine. Massachusetts' sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there. We prefer to the rule of lex loci delicti the new flexible approach of the Restatement (Second), Conflict of Laws, s. 379, comment d, p. 9, (Tent.Draft No. 9) which says the "* * * circumstances under which a guest passenger has

1. Restatement (Second), Conflict of Laws, Chapter 9 (Tent. Draft No. 9, 1964, approved May 21, 1964; Ehrenzweig, Conflict of Laws (1962); Leflar, Conflict of Laws (1959); Stumberg, Conflict of Laws (3d ed. 1963); Cavers in "Comments on Babcock v. Jackson," 63 Colum. L.Rev. 1212, 1219 (1963); Cheatham & Reese, "Choice of the Applicable Law," 52 Colum.L.Rev. 959 (1952); Currie in "Comments on Babcock v. Jackson," 63 Colum.L.Rev. 1212, 1233 (1963); Ehrenzweig, "The 'Most Significant Relationship' in the Conflicts Law of Torts," 28 Law & Contemp.Prob. 700 (1963); Harper, "Policy Bases of the Conflict of Laws: Reflections on Rereading Professor Lor-

enzen's Essays," 56 Yale L.J. 1155 (1947); Leflar in "Comments on Babcock v. Jackson," 63 Colum.L.Rev. 1212, 1247 (1963); Leflar, "Conflict of Laws," 36 N.Y.U.L.Rev. 36 (1961); Reese, "Conflict of Laws and the Restatement Second," 28 Law & Contemp.Prob. 679 (1963); Traynor, "Is This Conflict Really Necessary?" 37 Texas L.Rev. 657 (1959); Weintraub, "A Method for Solving Conflict Problems-Torts," 48 Cornell L.Q. 215 (1963); Comment "The Second Conflicts Restatement of Torts: A Caveat," 51 Calif.L.Rev. 762 (1963); see generally "Symposium, New Trends in the Conflict of Laws," 28 Law & Contemp.Prob. 673 (1963).

a right of action against the driver of an automobile for injuries suffered as a result of the latter's negligence will be determined by the local law of their common domicil, if at least this is the state from which they departed on their trip and that to which they intended to return, rather than by the local law of the state where the accident occurred." That is as far as this decision need go. Thus, the rights and liabilities of the parties should be determined by the law of Maine, which has the more significant contacts and more substantial relationships to the parties and the occurrence and the more important governmental interests in the solution of the issue before the Court. To the extent that earlier tort-conflict cases from this jurisdiction do not consider the most substantial relationships to the occurrence and the parties in light of the considerations of the governmental interests of the respective states, they are accordingly modified.

The merit of such a rule is that it accords the state having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum state to apply upon a rational basis the policy of the jurisdiction most intimately connected and concerned with the outcome of the particular litigation. See Babcock v. Jackson, 1963, 12 N.Y.2d 473, 481–482, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283, 95 A.L.R.2d 1, supra.

As stated by Chief Justice Kenison in Clark v. Clark, 1966, N.H., 222 A.2d 205 at 210, supra:

"This case is a comparatively easy one, and in cases like it the result will hereafter be reasonably easy for lawyers and trial judges to calculate. Admittedly there will be harder cases, more difficult to decide, cases that will not yield sure answers in terms of proper choice-influencing considerations as readily as this case does. That will not be a new phenomenon in conflict of laws. Nor will it be as bad as choice based on mechanical rules which do not take the relevant considerations into account. In course of time perhaps we will develop "principles of preference" based upon the relevant considerations, to guide us more exactly."

In sacrificing the absolutism of the lex loci delicti for the more just, fair and practical result that may best be achieved by giving controlling effect to the law of the state which has the greatest contact or concern with, or interest in, the specific issue creating the choice-of-law problem before the court, we have the experience of the many courts which have adopted the modern rule. These decisions have touched upon enough variations in the patterns of fact and law in the several contexts in which they had occasion to apply this flexible approach to conflict-of-law problems that general guidelines have emerged and a near-uniform set of basic principles under the rule appears at hand for the immediate use of the judiciary, the legal profession and the litigants.

In accordance with the terms of the report, since the law applicable to the decision in the instant case is the law of the State of Maine, the entry will be

Case remanded to the Superior Court for trial.

MARDEN, J., did not sit.